SIDNEY MULLINS ET AL. *v.* WILLIS SHAW ET AL.

1. ASSESSMENT. *Time of filing.*

> An assessment roll is not filed until it is delivered to the clerk of the board of supervisors for the purpose of being permanently kept in his office.

2. RECORD OF SUPERVISORS' COURT. *Parol evidence.*

> Parol evidence is inadmissible to impeach the record of the board of supervisors, upon which a tax sale rests, for the purpose of supporting a tax title.

3. TAX SALE. *Return of assessment.* *Laws* 1884, *p.* 14.

> If an assessment roll of 1883 was not received and approved by the board of supervisors, as then required by law, and if the curative act (Laws 1884, p. 14) authorizing its reception and approval, in August, 1884, was not complied with, a tax sale made thereunder, in March, 1887, is void, although the roll was received and approved at the September term, 1884, of the board. *Brothers* v. *Beck,* 75 Miss., 4°2, approved.

4. SAME. *Laws* 1884, *ch.* 168.

> In such case it makes no difference that the levee taxes, laid by laws of 1884 (Laws 1884, ch. 168, sec. 13), were not tendered by the taxpayer. The act did not, and was not intended to, cure defects in assessments.

5. SAME. *Assessment necessary.*

> A valid assessment, as well as a legal levy of taxes, is necessary to the validity of a tax sale.

FROM the chancery court of Sunflower county.

HON. A. McC. KIMBROUGH, Chancellor.

Shaw and others, appellees, were the complainants in the court below; Mullins and others, appellants, were defendants there. The object of the bill was to cancel a tax title held by appellants as a cloud upon complainants' title to the land in controversy. The decree of the court below canceled the tax title and the defendants appealed to the supreme court. The nature of the controversy is apparent from the opinion of the court.

*Baker & Moody* and *J. H. Wynn,* for appellants.

The only reason why it is insisted by the appellees that this sale is void is for the reason that the taxes for which the land was sold were levied upon the land assessment roll for the year 1883, which roll it is insisted was not delivered to the clerk of the board of supervisors at the time required by law, the first Monday of July. On the part of the appellants we contend:

(1) That the evidence introduced by appellees is insufficient to overthrow the *prima facie* case that the roll was returned at the time required by law, made by the tax sales list; and

(2) That even if the court should be of the opinion that the evidence is insufficient to prove that fact, the sale is still not invalid for the reason that a part of the taxes for which the land was sold, to wit, the tax due the board of levee commissioners for the Yazoo & Mississippi delta, was not paid or tendered before sale.

Counsel for appellee, as to the delivery of the roll, rely chiefly upon the case of *Brothers* v. *Beck,* 75 Miss., 482, in which case the delivery of the same roll in controversy was in dispute, and for the reason that this court in that case held that under the testimony introduced in that case, it was made certain that the roll was not delivered at the time required by law, they argue that the question is settled. We submit, however, that that case is not at all conclusive of the case at bar; that case was decided upon the evidence made a part of the record in that suit, and

this case will be decided upon the evidence introduced in this suit. It is not *res adjudicata,* nor can it be used as an authority in this case; it was simply a finding by the court of the facts shown by the evidence in that case, and not conclusive of the same fact in any other suit whatever. In fact, the evidence in the two cases is very materially different.

The list of lands sold to the state for taxes is *prima facie* evidence that the lands embraced therein were legally assessed, were delinquent for taxes duly imposed, and were sold according to law. See § 526, code 1880; *Grayson* v. *Richardson,* 65 Miss., 222. When, therefore, it was admitted that the lands were sold for taxes in March, 1887, and a sales list made out, subscribed and certified to by the tax collector, and filed as required by law, it was *prima facie* proven that the assessment roll of 1883 was delivered to the clerk of the board of supervisors on or before the first Monday of July. The question then presents itself: Is the evidence introduced by appellees sufficient to overcome this *prima facie* presumption as to that fact?

In order to overcome this *prima facie* case, the appellees introduced in the evidence:

(1) The assessment roll itself, showing (a) that the assessor made his affidavit to it on September 3, 1883, and (b) that the chancery clerk certified that it was filed in his office the same day.

(2) The minutes of the board of supervisors, showing an order approving the roll on that day.

(3) The deposition of D. L. McCauley, the deputy assessor, who made the roll and who testified to its delivery as follows:

"*Ques.* 4. State when it was the first time that you presented this land roll of 1883, as a completed roll, to the clerk of the board of supervisors.

"*Ans.* I don't remember exactly, but I think it was somewhere between the 1st and 4th of September.

"*Q.* 5. State why it was you did not present this roll on or before the first Monday of July.

"*A.* Because it was incomplete."

The court will observe that the witness testified that he delivered the roll as a completed roll for the first time, he thought between the 1st and 4th of September. In the second question, counsel asked witness why it was that he did not present " this roll " on or before the first Monday in July; so we insist, and call the court's attention to the fact, that when counsel said " this roll " he referred to the completed roll, and even though he did not, the witness so understood him when he answered, " Because it was incomplete."

This is all the evidence on this point introduced by the appellees, and only went to prove that the land roll of 1883, as a completed roll, was for the first time delivered to the clerk of the board of supervisors between the 1st and 4th of September of that year. What, of course, the witness and counsel meant by " completed roll " is left to conjecture. The evidence does not prove or attempt to prove that the roll was delivered for the first time at any date other than that between the 1st and 4th of September. It does not show that it was delivered at any day for the first time either in July or August.

The appellees' case, therefore, as to the delivery of the roll for the first time will have to stand or fall on a date between the 1st and 4th of September; and if it can be shown that the clerk and board had the roll in their possession at any time prior to that date, it must be presumed that it was in the hands of the clerk at the proper time, for the reason that the only evidence introduced by complainant is to the effect that the clerk got it in his possession for the first time at a date subsequent to the date when it is conclusively shown to have been in his possession. *Grayson* v. *Richardson,* 65 Miss., 222.

The respondents, appellants, then introduced in evidence the depositions of W. M. Duncan and J. H. Baker, the former a member of the board of supervisors in August, 1883, and the latter a member of the board of equalization, which met with the board of supervisors at its August term, 1883, and both of

whom testified that the roll was presented to the board of supervisors and the board of equalization at its August term, 1883, by the chancery clerk, and was equalized as provided by the Acts of 1882. We call the court's special attention to this evidence, as it is too long to copy in this brief, and as it goes to show conclusively that the roll was in the hands of the clerk and board at the August term, 1883. Respondents also introduced the following order of the board of supervisors, entered at the August term, 1883, to wit:

"Board met pursuant to adjournment on this Tuesday morning, August 7, 1883, and there were present the same as yesterday; and the board spent the day in sitting with the board of equalization for the examination of the assessment rolls for 1883, after which it is ordered that the board do adjourn until tomorrow morning at 8 o'clock."

This order, taken in connection with the depositions of Duncan and Baker, shows beyond the peradventure of a doubt that the assessment roll was in the hands of the clerk on August 7, 1883; and as the evidence of appellees was to the effect that it was delivered for the first time between the 1st and 4th of September, a date subsequent to the 7th of August, the presumption must be indulged (as held by this court in the case of *Grayson* v. *Richardson,* cited above) that it was delivered to the clerk at the proper time.

*As to the second proposition.* Admitting for argument's sake that the assessment roll was not returned on the first Monday of July, and that it was void, yet our contention is that it was void only as a basis for the levy and collection of taxes due the state and county, and was not void as a basis for the collection of the taxes due the board of levee commissioners for the Yazoo and Mississippi delta, and that as that tax was not paid or tendered before sale, the sale cannot now be invalidated because the state and county tax was illegal. In other words, if a part of the tax was legal and a part illegal, the sale cannot be invalidated for that reason unless the legal tax was paid or tendered before the

sale.    We are aware that the rule in such cases, prior to 1877, was to the contrary, as laid down by this court in the cases of *Dogan* v. *Griffin,* 51 Miss., 782, and *Beard* v. *Green,* 51 Miss., 856, but the legislature in that year changed the rule, and did so again in 1880.    See *Carter* v. *Hadley,* 59 Miss., 130.

By § 525, code 1880, it is expressly enacted that " if any part of the taxes for which such land was sold was illegal or not chargeable on said land, but part was chargeable, that shall not affect such sale nor invalidate such conveyance, unless it shall appear that before such sale the amount legally chargeable on said land was paid or tendered to the tax collector."    This section has several times been construed by this court, and held to apply to sales to the state as well as to individuals.    *Corburn* v. *Crittenden,* 62 Miss., 125 ; *Gibbs* v. *Dortch,* 62 Miss., 671 ; *Lochte* v. *Austin,* 69 Miss., 271.    The remaining question, therefore, then, is as to the validity of the tax due the board of levee commissioners for the Yazoo and Mississippi delta; and before entering upon a discussion as to the validity of that tax, we desire to call the court's attention to the distinction between that tax and the tax due the state and county.    The former, as we shall show, was a tax levied for the purpose of making certain improvements that would only benefit a designated portion of the state, while the latter was a tax levied for the usual and ordinary purposes of government, state and county.    In the latter case, that is, state and county taxes, in order for there to be a legal collection of the tax, there must be an assessment of the property upon which the tax is levied, made by the constitutional officer of the state, the assessor, in the manner prescribed by law ; while the former, the levee tax, being for the purpose of making local or special improvements, it is not required that there should be an assessment of the property taxed made by that officer, or that there should, in fact, be any assessment at all.    In fact, the legislature has the power to designate the property and fix its value and levy the tax accordingly, and as to how

this is done is immaterial. It can adopt the square foot, front foot, acre or the *ad valorem* principle, fixing the value either itself or through any source it sees proper, upon which the tax is to be collected. In other words, our contention is that sec. 26, art. 12, constitution of 1869, providing that " taxation shall be equal and uniform throughout the state," and that " all property shall be taxed in proportion to its value to be ascertained as directed by law," does not apply to the imposition and collection of the levee taxes. That section applies only to taxes levied for the usual and ordinary purposes of government, state and county, and not to taxes levied for the purpose of making local or special improvements. Our contention is that the legislature levied this tax upon the valuation of the property shown upon the land assessment roll for the year 1883, using that roll simply as a means of fixing the value of the property upon which the tax was to be calculated and collected, and that the validity of this tax was not at all made to depend upon the validity or invalidity of said roll as a basis for the collection of state and county taxes. In other words, that the legislature used that roll simply as a means of fixing the value of the property upon which the tax was to be collected, regardless as to when it was filed, when approved, or if approved at all.

*Frank Johnston* and *Johnson & Chapman,* for appellees.

In the case of *Brothers* v. *Beck,* 75 Miss., 482, the assessment roll, now under review, was before the court on the precise question as to when it was returned and approved. Chief Justice Woods, in delivering the opinion of the court, said:

".From the minutes of the board of supervisors, from the roll itself, and from the evidence of the witness McAuley, the deputy assessor who made the roll, it is made certain that the roll was not received and approved by the board of supervisors at the time required by law."

The case at bar, on the evidence, stands precisely as did the

case of *Brothers* v. *Beck,* except that Duncan and Moody testified in this case that the board of supervisors had the assessment roll before it at the August, 1883, meeting, and, with the board of equalization, were equalizing the assessments, and an extract from the minutes of the board of supervisors, reciting that the board was then engaged, with the board of equalization, in equalizing the assessments.

The minutes of the proceedings of the board of supervisors are public records. Code 1880, § 2142; code 1892, § 287.

A book which has been kept by persons in a public office ·because required or made useful by the nature of the office, or expressly required to be kept by the statute, is a public record. 1 Greenl. on Ev., sec. 483; 20 Am. & Eng. Enc. of Law, 508-509, sec. 4.

This proposition is abundantly established by the great weight of authority. Among the many cases recognizing this rule are the following: *Owings* v. *Speed,* 5 Wheat. (U. S.), 424; *Denning* v. *Roona,* 6 Wend. (N. Y.), 651; *Weith* v. *Mellington,* 68 N. C., 24; *People* v. *Zegst,* 23 N. Y., 140; *Cabott* v. *Britt,* 36 Vt., 349; *Sawyer* v. *Railroad Co.,* 62 N. H., 135.

Parol evidence is incompetent to contradict the record by showing that the roll was presented to, and approved by, the board at a different time.

It required affirmative action of the board to legalize the assessment, and the statute (Laws 1884, p. 14) was so construed in the case of *Osburn* v. *Hide,* 68 Miss., 45.

No action was taken by the board in respect to the assessment in this case at the meeting in August, 1884, and accordingly the defects in the assessment remained.

The act of February 28, 1884, did not cure the defect in the assessment roll. This act incorporated the board of levee commissioners for the Yazoo and Mississippi delta. It levied, not a specific acreage tax, as many of the levee laws did, but an *ad valorem* tax. Sec. 13 simply provided, instead of having a sepa-

rate assessment of the lands by the levee board, that " the assessment for the levee tax shall be the regular assessment made by the assessors of the several counties in said levee district, from time to time." Acts of 1884, 151, 152. The whole purpose was to simply dispense with the expense of separate assessments for the levee tax. There is nothing in the act suggestive of the idea that it was intended to operate as a curative act operating retrospectively and curing invalidities in existing assessments.

A specific acreage tax requires no assessment of the land, and it stands *ipso facto* as a legislative levy of the tax; but an *ad valorem* tax requires periodical assessments. The sole purpose was to avoid separate assessments by the levee board.

There is nowhere indicated in this statute any purpose to dispense, or cure, illegalities in any assessment, and declare assessments legal that were invalid. It has none of the language of a retroactive curative statute. And such a purpose is nowhere manifested by any of the provisions or language of the statute. If such a purpose had been in view by the legislature, it would have been indicated by terms having that effect, and not left to vague conjecture and remote inference.

The rule of construction on this subject is thus stated in the text of the American and English Encyclopedia of Law:

" It may be laid down as a fundamental rule in construing statutes so worded to admit of a construction which would render them retroactive as well as prospective, that a prospective operation only is to be given, unless a legislative intent to the contrary is declared, or necessarily implied from the circumstances or the language used." Am. and Eng. Enc. of Law, p. 448.

The rule is more strongly announced by this court in *Carson* v. *Carson,* 40 Miss., 351. Judge Ellett, delivering the opinion of the court, said, speaking of retroactive laws:

" Courts of justice always express the strongest disapprobation of such legislation, and will never be persuaded that the

legislature intends to give a retroactive effect to its enactments unless the clearest and most positive expression of such a purpose is given."

This court said, in *Garrett* v. *Beaumont,* 24 Miss., 377, in respect to retroactive statutes, that " the general rule is, that a statute shall only have such operation when its language will admit of no other meaning." *Garrett* v. *Beaumont,* 24 Miss., 377. This rule is of universal acceptance, and authorities in support of it could be cited *ad infinitum.*

Applying this rule to the statute of 1884, its construction presents no difficulties whatever.

Its purpose was simply to provide as a basis for the *ad valorem* taxes levied by the act the assessments made from time to time by the county assessors, and to avoid the making of separate assessments. Those assessments were thus taken as they stood, and there is no purpose, even remotely expressed, to cure, retrospectively, irregularities in assessment rolls. The purpose is clear; but if the statute was susceptible of two meanings, it should be construed not to be retroactive in its operation.

Argued orally by *Frank Johnston,* for appellee.

TERRAL, J., delivered the opinion of the court.

The decision of this court in *Brothers* v. *Beck,* 75 Miss., governs this cause. The facts of both cases are substantially the same. The record of the orders of the board of supervisors in reference to the land assessment roll of 1883 at the August and September terms of said board are the same. The testimony of Duncan, a member of the board of supervisors, and of Moody, a member of the board of equalization, contained in this record, is not in the *Brothers* v. *Beck* case; but their evidence was incompetent so far as it tended to dispute the record of the board of supervisors. A record imparts absolute verity and must be tried by itself; it cannot be impeached by parol evidence.

The record of the proceedings of the board of supervisors

clearly shows that the assessment roll of lands of 1883 was not filed with the clerk of the board of supervisors until September, 1883.    An assessment roll cannot be said to be filed until it is delivered to the clerk of the board of supervisors with the purpose of being permanently kept in his office; and the record here supports the view that the assessment roll under which the tax sale took place in this case was not filed with the clerk of the board of supervisors until September 3, 1883.    *Brothers* v. *Beck,* 75 Miss., 482.

*Affirmed.*

After the delivery of the foregoing opinion the counsel for the appellant filed a suggestion of error, to which the court made response as follows:

TERRAL, J., delivered the opinion of the court, responding to the suggestion of error.

Counsel of appellants complain of the opinion of the court because it states that the facts of this case and of *Brothers* v. *Beck* are substantially the same; whereas they say that the court overlooked the fact that in the present case levee taxes were imposed by the laws of 1884, upon the lands of Sunflower county, no part of which was paid or tendered before the sale of the land, and that such fact did not exist in the *Brothers* v. *Beck* case.    The insistence is that the tax sale is valid because the levee taxes were legal and were not paid or tendered before the sale.    The state and county taxes in the *Brothers* v. *Beck* case were legally levied; there was in that case nothing imperfect in the levee of the state and county taxes, as there is nothing imperfect in this case in the levy of the levee taxes.    In fact, the taxes, state, county and levee, in the present case, are legal; the defect consists in having no legal assessment of lands upon which the levies made for the years 1883 and 1884 could operate.    It is necessary not only to have a proper levy of taxes, but it is essential to have a legal assessment of the lands upon which the

levy is to operate. The assessment roll is the warrant of the tax collector for collecting the taxes; if that is void, his action in the sale of land under it is void.

It was argued that the act of the legislature of 1884 (laws of 1884, ch. 168) validated the assessment rolls of 1883. We diligently scanned that act to discover such purpose. The act specifically imposed taxes for levee purposes, but we find nothing in it pertaining to the assessment rolls of Sunflower county. The legislature doubtless supposed that there was an assessment of lands in that county, and that it was properly made; and we think if the legislature had known of any defect in the assessment, it would have provided for the illegality. There is nothing in the act of 1884 which suggests to our minds that the legislature supposed that there was any defect in the land assessment roll of 1883, or by which it designed to cure any defect of that kind. If such were the purpose of the legislature, it has been singularly obscure in the expression of its purpose. Counsel's argument " that this levee tax [of 1884] was levied by the legislature upon the assessment rolls of the various counties regardless as to the validity or invalidity of that roll, as a basis for the collection of state and county taxes, and regardless as to when it was filed with the clerk of the board of supervisors," is noted by us. We express our unqualified dissent from that view of counsel. The contention of counsel on this point, when the case was first on submission to us, was diligently considered; but the contention was so opposite to any view we could take from the letter or the spirit of the act of 1884 imposing these levee taxes, and so contrary to all reasons of justice and equity known to us, that we deemed it unnecessary to offer it any particular refutation. We now expressly disaffirm it.

*Suggestion of error overruled.*