REED, COUNTY TAX COLLECTOR, *v.* NORMAN-BREAUX LUMBER CO.*

(Division A. Jan. 18, 1926. Suggestion of Error Sustained in Part and Overruled in Part March 29, 1926.)

[107 So. 545. No. 25331.]

1. DRAINS. *Proceedings for issuance of bonds, as well as resulting bonds, held validated by general curative act (Laws 1924, chapter 225).*

   Proceedings for issuance of drainage district bonds, as well as resulting bonds, sold or contracted to be sold for not less than par, though statutory majority had not signed petition, *held* validated by Laws 1924, chapter 225, a general curative statute.

ON SUGGESTION OF ERROR.

2. DRAINS. *Paper not certified, filed or approved held not a valid assessment for drainage taxes (Code 1906, section 377).*

   Under Code 1906, section 377, part of the Swamp Land Act of 1902, paper containing list of names and number of acres, headed with name of swamp land district, but not certified by assessor, nor filed in chancery clerk's office, nor approved by board of supervisors, is not a valid assessment for drainage taxes of district.

*Corpus Juris-Cyc References: Constitutional Law, 12CJ, p. 1095. n. 55, 66. Drains, 19CJ, p. 631, n. 10; p. 726, n. 39, 41. Statutes, 36 Cyc, p. 1134 n 95.

Appeal from chancery court of Adams county.

Hon. R. W. Cutrer, Chancellor.

Suit by the Norman-Breaux Lumber Company against W. H. Reed, Tax Collector for Adams County. Motion to dissolve temporary injunction was overruled, and defendant appeals. Affirmed and remanded.

*Ratcliff & Kennedy,* for appellant.

The injunction should have been dissolved. The question of the issuance of bonds is regulated entirely by statute; the legislature having prescribed the mode and method may at any time, by curative statutes, waive compliance with its former requirements. The legislature regularly validates taxing districts' proceedings for the issuance of bonds and the bonds themselves. By chapter 225, Laws of 1924, approved April 9, 1924, the legislature validated all proceedings theretofore had by the boards of supervisors looking to the issuance of bonds and thereby waived or cured any irregularities, if any there were, in the petition, notices, etc. The creation of the district was, therefore, validated by the statute cited.

*Luther A. Whittington,* for appellee.

It is contended by counsel that chapter 225, Laws of 1924, validated *all proceedings* for the issuance of these bonds, even though it does not expressly validate the bonds. This chapter went into effect on April 9, 1924; the bonds were ordered issued on April 8, 1924; *but they were not sold, nor were they contracted to be sold,* until some time in June, the clerk being ordered to advertise for the sale of the bonds on May 5, 1924. So, on April 8, 1924, admittedly, these bonds had neither been sold nor contracted to be sold.

We submit to the court that it is a very finely spun theory that counsel are indulging in, in construing chapter 225, Laws of 1924. By reference to said chapter it

will be noted that it was an "Act to validate all bonds, etc., which had been sold or contracted to be sold at not less than par and accrued interest." The evidence and sole purpose of the legislature, therefore, was to validate certain bonds and these certain bonds were limited to those which had been sold or contracted to be sold *prior* to the enactment of this act.

Counsel for appellant ingenuously undertake to argue to the court that the legislature did more than validate the bonds. They contend that the legislature validated all the proceedings by which the drainage district or other district might have been created as well as the proceedings leading up to the issuance of said bonds.

The plain purpose and express intent of the legislature was to validate all bonds *which had been sold or contracted* to be sold and, of course, in making such validation, it was necessary to validate, in effect, all proceedings pursuant to which and by virtue of which these bonds had been sold or contracted to be sold.

The only proceedings, we submit, that were intended to be validated by this act were proceedings pursuant to which bonds had been issued or had been sold or contracted to be sold, after authorization, but before issuance. To give this statute any other construction would be exceedingly far-fetched and a departure from the plain intent and meaning of the chapter.

*Luther A. Whittington,* for appellee, on suggestion of error.

The court erred in reversing the decree of the court below even though it correctly or properly holds that chapter 225, Laws of 1924, validated said bonds. The bill of complaint charged that the assessment of the lands of complainant under the Swamp Land Act and in the Swamp Land District was void, and that since the assessment was void, even though there was a legal levy,

even though the bonds were valid, even though all acts and proceedings of the board issuing the bonds had been validated, nevertheless, complainant was entitled to the injunction restraining the enforcement of such levy or the collection of the taxes.

The relief prayed for herein by complainant was based not only upon the illegality of the levy and the illegality of the bond issue, but was also predicated upon the illegality of the assessment. *Mullins* v. *Shaw,* 77 Miss. 910. In this case the court held that the levy was legal and proper; but, nevertheless, because the assessment was void, the tax collector was without right to collect the taxes arising by virtue of the operation of the levy.

The record in this case shows that there was not a valid or legal assessment for the year 1924 of the lands in the Homochitto Swamp Land District. A copy of what purports to be the assessment of these lands is shown in the record herein. By reference to same it will be noted that it is altogether unauthenticated, is not signed nor certified to by the assessor, is not approved by the board of supervisors and is not filed with the clerk of the board of supervisors. In short, there is nothing whatsoever to identify, import verity to it or endow it with the sanctity of official action. See section 377, Code of 1906 (section 3752, Hemingway's Code).

We submit, therefore, that the assessment complained of herein as being void and illegal, is void and illegal and that complainant was entitled to have the sheriff enjoined from the collection of the taxes, as the lower court decreed.

*Ratcliff & Kennedy,* for appellant, in answer to suggestion of error.

It is now contended that a valid assessment of the property had not been made and even though the levy was valid, the collection of the tax should have been enjoined by the court.

There is no merit in the contention for the following reasons:   (1)  A valid assessment was made; (2) whether the assessment was valid or invalid, the appellee here makes out no cause of complaint because it admits the ownership of the exact acreage and its location in a swamp land district and if the assessment is irregular in any manner, it was not to the prejudice of the lumber company.; (3) the bill of complaint is not based upon an illegal assessment and there is no prayer for relief against the same.

The lumber company could not complain of the assessment as being excessive acreage, for it admits the acreage.   It could not complain of the ownership, for it alleges the ownership.

However, the assessment is presumed to be legal and regular.   The appellee attempted to make proof as to the assessment but the sheet so offered in evidence was not identified as the assessment roll because the chancery clerk said that he had been in office only a few months and there were many records there and he did not know what they were, but under his personal supervision he did not see this particular assessment.   He also stated that he was not positive as to the matters about which he was testifying; but, as to the assessment roll or its contents, there is not an allegation of the bill or any of the evidence that shows anything prejudicial to the lumber company.

No complaint is made in the bill as to the *assessment,* nor is any relief asked as against the assessment; but, on the contrary, the lumber company asks in its bill for affirmative relief based upon the validity of the assessment.   It is, therefore, apparent that complainant did not ask for any relief as against the assessment, but the only relief prayed for was a temporary injunction against the collection of the ten cents per acre to pay the contested bond issue and that that injunction be made permanent for any levy in excess of three cents per acre.

The suggestion of error should be overruled.

Argued orally by *L. T. Kennedy,* for appellant, and
*L. A. Whittington,* for appellee.

McGOWEN, J., delivered the opinion of the court.

The appellant, the Norman-Breaux Lumber Company,
filed its bill in the chancery court, praying an injunction
against the tax collector of Adams county to prevent the
collection of certain swamp land taxes of thirteen cents
per acre, levied by the board of supervisors at the in-
stance of the commissioners of the Homochitto swamp
land district, contending that said levy was void, that a
second bond issue for drainage purposes, before a prece-
dent issue had been fully paid, was void and without au-
thority. The maximum amount allowed to be taxed for
this purpose under the law was fifty cents per acre, and
the second bond issue for twenty thousand dollars re-
quired ten cents per acre as tax for the payment of the
second bond issue; the total tax for both bond issues being
thirteen cents per acre, as levied by the board of super-
visors for all the purposes in anticipation of the taxes.

The main contention is that, although the order of the
board recited jurisdictional facts, in truth and in fact
the statutory majority had not signed the petition for
the second bond issue of twenty thousand dollars. There
is some allegation that the notice was not mailed in con-
formity with the statute, which is chapter 70 of the Laws
of 1902, and the amendments thereto. It would be per-
haps interesting but unavailing to discuss the proposi-
tions submitted in the briefs of counsel, but, in view of
the fact that the legislature has validated this bond issue
and the proceedings of the board of supervisors leading
up to the issuance of the bonds, we shall pretermit a dis-
cussion of the various points raised.

The order of the board of supervisors directing this
bond issue was passed by the board of supervisors on
April 8, 1924, and on that date became effective, although,

of course, the bonds had not been sold or contracted to be sold.

Chapter 225 of the Laws of 1924 was approved April 9, 1924. The title and section 1 of said act is set out here in full:

"An act to validate all bonds, notes, certificates, loan warrants, or other obligations of any county, road district, school district, or subdivision or district thereof or any municipality, separate school and district or drainage district in the state of Mississippi, which have been sold or contracted to be sold at no less than par and accrued interest.

"*Validating All Bonds and Proceedings of Taxing Districts.*

"Section 1. Be it enacted by the legislature of the state of Mississippi, that all proceedings heretofore had and taken by the board of supervisors of any county in this state, or the board of commissioners or board of mayor and aldermen of any municipality in this state, or the board of commissioners of any drainage district in this state, for the creation of any road district, school district, drainage district or other taxing district, or any chancery court in this state, to provide for the issuance of any and all bonds, notes, certificates, loan warrants or other obligations of any county, road district, school district or subdivision or district thereof, or any municipality, separate school district, or drainage district in the state of Mississippi, or by the Yazoo-Mississippi levee district or the board of commissioners of the Mississippi levee district, are hereby ratified, validated, and confirmed, and all bonds, notes, certificates, loan warrants, or other obligations issued, or to be issued, pursuant to such proceedings, which have heretofore been sold or contracted to be sold at not less than par and accrued interest, shall be and the same are hereby ratified, validated and confirmed, regardless of the law under which the proceedings for which the issuance of said bonds, notes, certificates, loan warrants or other obligations

were taken, and notwithstanding any defect or omission or irregularity in the proceedings, providing for the issuance of same or the failure to comply with any law or part of law in reference thereto, and regardless of whether or not said obligations have been delivered, or may be delivered, within one year of the date of the election authorizing the issuance of same, and said bonds shall be valid and binding obligations of said county, road district, school district, or subdivision or district thereof, or any municipality, separate school district or drainage district, or levee district. Provided, said obligations are delivered and paid for within two years from the date of the passage of this act. And in any and all cases where any part of said bond issue has been heretofore sold and delivered the remainder of such issue is hereby validated and may be hereafter sold and delivered under the terms of this act.

"Provided that this act shall not apply to issues of bonds and other certificates of indebtedness the validity of which is now contested by legal proceedings."

The court below having overruled the motion to dissolve the temporary injunction granted, and having allowed an appeal to this court to settle the principles of the case, in effect holding that the twenty thousand dollar bond issue and the levy of taxes for the payment thereof were void, the above chapter, in our opinion, very clearly validates all proceedings in any taxing district of the state looking to the issuance of bonds, and the fact that there is some variance in the title of the act from the body thereof is of but slight weight in determining the clear language and meaning of section 1 of the act; and the divisions thereof are connected by the word "and"—the first validating all proceedings had and taken by the proper authorities of a taxing district providing for the issuance of bonds, and the second validating all bonds issued or to be issued which have heretofore been sold or contracted to be sold.

The legislature had the authority by general law, by the passage of a statute curative in its nature and not creative, to validate the proceedings as well as the bonds resulting from the proceedings. This statute is curative in nature and not creative, and the legislature had the authority to provide for the issuance of bonds by the several subordinate taxing districts upon the petition of any given number of taxpayers, and this act is general, and in all respects validates the bonds issued and the tax levied to pay same necessarily.

We think the court below erred in overruling the motion to dissolve the injunction. We are of the opinion that the injunction was improperly granted in this case, and the motion to dissolve same should have been sustained.

*Reversed and remanded.*

## On Suggestion of Error.

After a careful re-examination of the briefs and record in this case, we file this additional opinion, allowing the former opinion to stand, omitting the last paragraph which will be corrected and modified as hereinafter stated, adhering to the opinion that chapter 225 of the Laws of 1924 lawfully and constitutionally validated the bond issue attacked in this case.

Our attention is called to the fact that the bill filed in this case attacked the validity of the assessment for drainage taxes, and charged that the assessment and levy were based upon a sheet of paper which was illegal and void. It is but just to ourselves to say that the language of the bill so clearly indicated that the attack was upon the bond issue, and the levy of ten cents per acre to pay the indebtedness thus created, together with the fact that counsel's brief was directed to the point decided by this court; that it contains sixteen pages, and only this reference is made therein to the point which is now presented on suggestion of error, ''Moreover, we

submit to the court that the assessment of lands in this
case was nothing but a sheet of paper, not filed, or at
least not marked filed, and nothing on its face to import
verity, or show a valid assessment of lands,'' and we
treated the entire brief and record as being an attack
upon the validity of the bond issue and the levy of taxes.
And although the bill charges that ''the board of super-
visors on the ——— day of November, 1924, illegally and
contrary to law, made a levy of thirteen cents an acre
against all the lands embraced in said swamp land dis-
trict, and against the lands aforesaid of complainant lo-
cated and situated therein, complainant avers and charges
that said levy is wholly void,'' etc., we took it for granted
that counsel would have at least introduced the order of
the board of supervisors making this levy on the ———
day of November, 1924, if his attack had been seriously
intended as against the assessment.

It will be borne in mind that this cause is here on an
appeal from a decree overruling a motion to dissolve the
temporary injunction granted against the levy of ten
cents per acre on the lands in the Homochitto swamp
land district, and the prayer of the bill in this respect,
together with the injunction issued and the brief of coun-
sel, led us to overlook this point so earnestly urged in the
argument and brief of counsel for appellee in this case.

However slight the proof may be, it is apparent that
the sheet of paper, with a list of names and number of
acres, headed ''Homochitto Swamp Land District,'' not
sworn to or certified by the assessor, not filed by the
chancery clerk in his office, nor approved by the board of
supervisors, is all that appears in the record as being a
basis for the assessment of these lands of the Norman-
Breaux Lumber Company for the year 1924. While it
seems to us that it could hardly be possible to try the
case without introducing the order of the board of super-
visors, passed in November, imposing a levy of taxes
on these lands, yet on this point we do not think that
this sheet of paper in the record here, uncertified, not

filed in the chancery clerk's office, not approved by the
board of supervisors, and not shown to have been certi-
fied to the sheriff, can be the basis upon which title to
land can rest; and upon the record here we must say that
the chancellor was correct in overruling the motion to
dissolve the injunction, because there was no valid as-
sessment upon which a valid levy could have been made
for the collection of taxes aforesaid by the Swamp Land
Act of 1902 (Laws 1902, chapter 70).

In view of the uncertain testimony, we are compelled
to give weight to the chancellor's finding on this ques-
tion of fact. Tried where the record was available to all
parties, proper procedure would have required, perhaps,
that the party attacking the levy should introduce the
order of the board of supervisors imposing the levy,
yet the sheet of paper and the testimony about it is in
this record uncontradicted.

Section 377 of the Code of 1906, which is a part of the
Swamp Land Act, is as follows:

"*Separate Additional Assessment.*—The tax assessor
while making the regular assessment of the lands in said
county, as required by law, shall· also make a separate
additional assessment of all the overflowed lands in each
swamp land district. And at the head of each special
assessment for a swamp land district shall be distinctly
designated the district to which it applies. In case the
general assessment of lands is not to be made at the next
assessment after such survey is made and such map or
plat filed, the assessor shall make such special assessment
of such overflowed lands during the time the next per-
sonal assessment is required to be made, which special
assessment shall stand until the next general assessment
of land required by law. All laws as to general assess-
ments of taxes, and all laws applicable to state and
county taxes and the sale of lands for lands delinquent
taxes, shall apply to such swamp land assessments and
taxes, and the sale of such land for delinquent taxes so
far as the same are not inconsistent with these provi-

sions. The assessor shall have the same fees for such swamp land assessments as are provided by law for other assessments, and the collector shall have the same fees for collecting such taxes as he receives for collecting state and county taxes.''

It will be noted that the general law with reference to the assessment of state and county taxes is applicable here, where not inconsistent with the provisions of the Swamp Land Act. We unhesitatingly say that there is no inconsistency with the provisions of this act in applying the general law relative to the assessment of taxes; that the assessor shall make the assessment by complying with the general law, in that he make affidavit to and certify his assessment and file the same with the chancery clerk. According to the record here, this was not done, and there does not appear to be any proper proceeding upon which the sheriff could sell these lands and the purchaser thereby obtain a good title. And this is true, although the bill shows there is no dispute as to the number of acres owned by the appellee, the Norman-Breaux Lumber Company, in the Homochitto swamp land district, and although it expresses a willingness to pay three cents per acre on its entire acreage, as appears on the uncertified sheet of paper in this record.

We cannot lend our approval to this loose procedure for the forfeiture of lands for nonpayment of taxes, and there must be in the imposition of drainage taxes a substantial compliance with the forms of law required in the assessment of and imposition of state and county taxes. In the case of *Mullins* v. *Shaw,* 27 So. 602, 28 So. 958, 77 Miss. 900, Judge TERRAL, as the organ of the court, said in responding to the suggestion of error:

''It is necessary not only to have a proper levy of taxes, but it is essential to have a legal assessment of the lands upon which the levy is to operate. The assessment roll is the warrant of the tax collector for collecting the taxes; if that is void, his action in the sale of land under it is void.''

Assuming that the sheet of paper in this record is the only assessment of these lands for the drainage taxes of 1924 in this drainage district, we unhesitatingly say that the assessment is void, and that the levy based thereon is void, and that an injunction will lie to prevent the collection of taxes for the year 1924 based upon a void assessment and levy.

As the case is to be remanded at all events, it may be that the order of the board of supervisors in November, 1924, will disclose that a valid assessment was filed with it on which to base the levy.; otherwise, it would be folly to undertake to collect taxes without a legal assessment of the lands, and without complying with the plain unequivocal provisions of the statutes on the subject. The order now is that this cause be affirmed, in so far as an injunction was granted against the collection of taxes on complainant's land for the year 1924, only as to the ten cents per acre, and the cause is affirmed and remanded.

Suggestion of error sustained in part and overruled in part.