ENTREKIN *et al. v.* TIDE WATER ASSOCIATED OIL Co. *et al.*

(In Banc. May 10, 1948.)

[35 So. (2d) 305. No. 36679.]

768

Hathorn & Hathorn, of Hattiesburg, and Holmes & Bowdre, of Hernando, for appellants.

Watkins & Eager, Wells, Wells, Newman & Thomas, L. O. Smith, Jr., W. N. Ethridge, Jr., and Elizabeth Hulen, all of Jackson, T. W. Davis, Jr., of Hattiesburg, Jesse W. Shanks, of Purvis, and Lloyd Armstrong, of Houston, Texas, for appellees.

772

Argued orally by **P. H. Bowdre**, for appellants, and by **Earl T. Thomas**, for appellees.

**Roberds, J.**, delivered the opinion of the court.

The subject matter of this litigation is the title to eighty acres of land located in Lamar County, Mississippi. Appellants claim to be the owners of the title as the heir of W. H. Entrekin, now deceased, who was the owner of the land June 1, 1925, and June 6, 1927, at which respective times the land sold for nonpayment of taxes, the first sale being made to the State of Mississippi and the second to I. H. Bass. On October 24, 1940, the State, by patent, conveyed the land to T. W. Davis, Jr. All appellees claim through the foregoing two sales, and there is no controversy or issue between the appellees themselves. If either of such sales is valid appellants have no claim to the property. They claim that both sales are void. Without passing on the validity of the second sale, we have concluded the first was legal and valid, and that, therefore, appellants have no title or legal or equitable claim to the land. We, therefore, decide only the legality of the sale of June 1, 1925.

No invalidity as to the assessment of the tax or the sale for nonpayment therefor appears on the face of the proceedings. But appellants say the sale was void because (1) an offer was made to pay the tax without success under such conditions as amounted to legal payment under the former holdings of this court, and (2) that some of the minutes levying the tax were not signed by the President of the Board of Supervisors until after adjournment of the Board.

The proof on the first proposition is that W. H. Entrekin, at the time of the assessment and sale, was located and engaged in the sale of automobiles at Hernando, Mississippi, and owned several hundred acres of land in Lamar County. He had formerly owned this and other lands jointly with other parties. Partition deeds had been executed between the parties. However, the lands in controversy, and some other lands belonging to Entrekin, were yet assessed on the rolls in the name of Pole Stock Lumber Company. Miss Mamie Entrekin, a daughter of W. H. Entrekin, and now one of his heirs and one of the appellants, was working in the office of her father at Hernando. She had charge of the payment of taxes on lands in Lamar County. She testified, ''I wrote to the sheriff and asked him to send me the amount of taxes I would owe on the land my Daddy got from Gammel in the division.

''Q. State whether or not you reported to him as to who the land would be assessed to? A. I did, because it had been assessed to Pole Stock Lumber Company ever since we had been there and I mentioned the fact it was still in the name of Pole Stock Lumber Company.

''Q. Which part of the land did you ask him to tell you the amount of taxes for 1924?'' A. On all the land that my father received by the division of the land he got from Gammels.''

The sheriff and tax collector sent her statements of the taxes owing on several hundred acres of land in Lamar

County—some assessed in the name of Pole Stock Lumber Company, some in the name of W. H. Entrekin and some in the names of a number of other parties. No statement contained the land in controversy. Thus it is seen there was by the owner a general request of the tax collector to send a statement of the amount of taxes owing on lands W. H. Entrekin had been deeded by Gammels. It is shown further that the amount of land owned by W. H. Entrekin in Lamar County was constantly changing; frequently he was being deeded and he was deeding away lands in that County. This general request placed on the tax collector the job of searching the records and determining accurately what lands were owned in that County by W. H. Entrekin, whether they were assessed in his name or not. Miss Entrekin did not give him a description of the lands on which she wanted to pay the taxes. She was the one who had been paying the taxes and presumably she could have given the tax collector such description. The collector was under no duty to make that kind of a search. He could not assume responsibility for being accurate about that even had he, as an accommodation, made an effort to make the search, which, apparently, he did. No tender of payment was made to, or refused by, the collector. This Court has never held the foregoing combination of circumstances to be, in legal effect, a payment of taxes. The case is controlled, under its facts, by the rule announced in Neal v. Shepard, 157 Miss. 730, 128 So. 69, 70, in which this Court said: ''The point then gets down simply to this: May a taxpayer be held to have made a valid tender, against which no tax sale can afterwards be made, when without more he goes to the tax collector's office and offers to pay on 'all my residence lands,' or on 'all the Smith residence lands,' or on 'all the McRae residence lands'? And we answer this question in the negative.''

This renders it unnecessary for us to pass upon the contention of appellees, in respect to the question under consideration, that even though the taxpayer had made

a legally effective offer to pay the taxes, such act would not invalidate the title of appellees, the act not being shown of record and appellees being, as they claim, innocent purchasers for value.

Appellants offered to prove by one Mullins and Miss Slade that some of the minutes of the Board pertaining to the assessment and sale were not signed by the President until after the adjournment of that meeting of the Board. Mullins was a member of the Board and Miss Slade the deputy clerk thereof during the period of assessment and sale in question. The Chancellor held that proof incompetent. As heretofore stated, the minutes appear regular on their face. This was an effort to contradict them by oral proof in a collateral attack. Appellants cite Gardner v. Price, 197 Miss. 831, 21 So. (2d) 1; Brand v. Board of Supervisors, 198 Miss. 131, 21 So. (2d) 579, and Merchants & Mfg. Bank v. State, 200 Miss. 291, 25 So. (2d) 585, in support of their contention that this oral proof was competent. In these cases the facts were shown by the minutes themselves—not by oral proof contradicting them. Oral proof to contradict, alter or change minutes regular upon their face is not competent. Smith et al. v. Board of Supervisors, 124 Miss. 36, 86 So. 707; Yazoo Delta Lumber Co. v. Eastland, 104 Miss. 553, 61 So. 597; Childress v. Carley, 92 Miss. 571, 46 So. 164, 131 Am. St. Rep. 546; Mullins v. Shaw, 77 Miss. 900, 27 So. 602, 28 So. 958.

Appellants also offered to show by said two witnesses that in their opinion the name of the President of the Board appearing to be signed to some of the minutes was not his genuine signature; that his name had been signed by some one else. The court refused to receive that testimony. Appellants say that was reversible error. What we have just said as to contradicting minutes by oral proof applies with equal, if not greater, force to this situation. The President of the Board had been dead a number of years when this case was tried. He was not available to verify his signature. It had been twenty-two years

since the minutes were adopted. Official records, required by law to be kept, import verity. Childress v. Carley, supra. They deal with, and dispose of, property, liberty and lives of the litigants. There must be an end and finality to such proceedings. To permit witnesses, years after the judicial acts have taken place, to give to triers of fact who might accept them oral opinions that signatures of officials appearing upon official records were not genuine, would produce utter chaos in judicial procedure. Nothing would ever be settled. To illustrate: Suppose one be duly sentenced to the penitentiary for life. Years later he offers witnesses who are willing to say that in their opinion the signature of the trial judge on the minutes of the court imposing such sentence, and even of the Presiding Justice of this Court on the minutes affirming the sentence, were not the genuine signatures of those officials Would such testimony be competent? If so, the result of its admission, as determined by the triers of fact, would have to be accepted. This would produce judicial turmoil. In the language of Judge Arnold in McAllum v. Spinks, 129 Miss. 237, 91 So. 694, 696, ". . . it would cut the throat of reason and knock the brains out of common sense." The trial court was correct in holding that the evidence under consideration was incompetent.

In view of the foregoing, it is not necessary for us to pass upon the contention of appellees that after the lapse of some twenty two years, during which time appellants have paid no taxes whatever on the lands in question, that appellants are estopped by laches to question the validity of the tax sale.

We have examined into the merits of the other attacks by appellants upon the tax levy constituting the basis of the tax sale in question. We find no invalidity in the assessment or the sale.

Affirmed.