608 So.2d 1313 (1992)
West COLE
v.
STATE of Mississippi.
No. 90-KA-1094.
Supreme Court of Mississippi.
August 31, 1992.
Rehearing Denied December 3, 1992.
*1315 Dewitt L. Fortenberry, Jr., Mendenhall, James W. Craig, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., Charlene R. Pierce, Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
McRAE, Justice, for the Court:
On January 21, 1957, West Cole entered a plea of guilty to manslaughter in the Circuit Court of Coahoma County. He was sentenced to serve one year in jail. Subsequently, Cole was convicted of capital murder and sentenced to death. See Cole v. State, 525 So.2d 365 (Miss. 1987), cert. denied 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988), reh'g. denied 488 U.S. 1023, 109 S.Ct. 826, 102 L.Ed.2d 815 (1989). This manslaughter conviction was used as an aggravating circumstance at the sentencing phase of Cole's capital murder trial.[1]
On April 2, 1989, Cole filed a motion pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCRA), to vacate and set aside the judgment on the ground that he was not represented by a lawyer during the court proceedings. On January 2, 1990, Cole amended his motion to include as an additional ground for relief the charge that he was incompetent to plead guilty in 1957. The trial court considered and summarily denied the motion, holding Cole barred by the three year statute of limitations found in the UPCCRA. We affirm.

I.
Cole maintains that he is excepted from the procedural bar of the UPCCRA because (1) intervening decisions have been rendered which would have adversely affected the outcome of his conviction, and (2) his charge of violation of constitutional due process rights may not be procedurally barred. He attached to his motion a copy *1316 of the Coahoma County Circuit Court docket in the 1957 cause which left blank the space provided for entry of the name of defendant's counsel.
The State has responded that (1) Cole's attack on the 1957 judgment was made for the purpose of impacting the validity of his death sentence, (2) Cole's claims are barred by the three year statute of limitations of the UPCCRA, Miss. Code Ann. § 99-39-5(2) (Supp. 1991), (3) the intervening decisions cited by Cole were decided prior to the running of the statute of limitations, and, therefore, could have been raised sooner, and (4) the minutes of the Court regarding the 1957 manslaughter conviction recite that Cole was represented by counsel during the court proceedings.
Aggrieved by the adverse decision of the trial court, Cole appeals, contending:
(1) His mental incompetence tolls the running of the statute of limitations;
(2) The Mississippi Uniform Post-Conviction Collateral Relief Act's abolition of the common law writ of post-conviction habeas corpus, § 99-39-3(1), in conjunction with the three year statute of limitations, § 99-39-5(2), acts as a suspension of the writ of habeas corpus in violation of the Mississippi Constitution of 1890, art. 3, §§ 14, 21, and the Eighth and Fourteenth Amendments to the United States Constitution;

(3) The intervening decision of Johnson v. Mississippi and Johnson v. State except his petition from the statute of limitations;

(4) He is entitled to an evidentiary hearing on his claims.

II.

DOES WEST COLE'S ALLEGED INCOMPETENCE TOLL THE RUNNING OF THE STATUTE OF LIMITATIONS?
Cole alleges that Miss. Code Ann. § 15-1-59 (Supp. 1991) prevents application of the three year statute of limitations of the UPCCRA. Miss. Code Ann. § 15-1-59 (Supp. 1991) provides:
If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one (21) years.
Simply put, the limitation period provided by Miss. Code Ann. § 99-39-5(2) is not subject to the savings clause in Miss. Code Ann. § 15-1-59. The savings clause in § 15-1-59 applies only to actions mentioned in Chapter 1, Title 15 of the Mississippi Code of 1972, and we have clearly held so on at least two occasions.
In Foster v. Yazoo and MVR Co., 72 Miss. 886, 18 So. 380 (1895), the plaintiff sought to recover for his father's wrongful death. The statute of limitations was asserted as a defense. Plaintiff responded that he was an infant at the time of the alleged wrongful act, that he had not been represented by a guardian and his action was not barred because of the saving statute. We held that the saving statute applied only to actions mentioned in the Code chapter on "limitations of actions", which did not include the wrongful death statute.
Foster was cited with approval in Arender v. Smith County Hospital, 431 So.2d 491 (Miss. 1983). In Arender we rejected the argument that the time for bringing a wrongful death action was subject to the savings clause of § 15-1-59 and stated:
The above statute specifically reserves the tolling of the limitation period to those personal actions mentioned within the chapter of which the wrongful death act is not one.
* * * * * *
The statute of limitations does not look to the character of the plaintiff, but to the nature of the action. This is not so as to a savings clause. It contemplates the person, and not the action. The claim to exemption is against the current *1317 of the law, and not coextensive with its effective provisions. In case of doubt, therefore, the presumption is against the one claiming the exemption. The savings of the statute are not to be as liberally construed as its effective provisions, because they are designed to put an end to strife and litigation, and tend to the security of all men.
Arender 431 So.2d at 492, 493, 494.
Our Post-Conviction Relief Act is not anywhere mentioned Miss. Code Ann. § 15-1-1 et seq. (Supp. 1991), and, therefore, is not subject to the savings provision in § 15-1-59. Moreover, there is no language in the UPCCRA providing that such an exception tolls the statute of limitations of the act. There is no merit to this claim.
Also, remember that Cole attacks a plea and conviction which occurred in 1957, and was later used against him in capital murder proceedings. The savings clause of § 15-1-59 provides in pertinent part that "the saving in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one (21) years."
Cole was thus entitled to bring an action attacking his 1957 plea and conviction for more than 32 years before he got around to filing the pleadings for this purpose. The enactment of our UPCCRA did not create new notions of jurisprudence, but instead simply codified review constraints traditionally practiced by this Court. Irving v. State, 498 So.2d 305, 308 (Miss. 1986). Our articulations in Irving make this abundantly clear.
Thus, even assuming (and we do so here only arguendo) Cole's right to challenge the 1957 plea and conviction was preserved and prolonged by the savings clause of § 15-1-59, it nevertheless expired in 1978 by the plain provisions of the statute. This occurred six years prior to the enactment of our UPCCRA. Under these circumstances, § 15-1-59 does not toll the running of our UPCCRA limitations clock. To hold otherwise would be tantamount to holding that enactment of our UPCCRA revived and resurrected Cole's claim. We should not ascribe such an illogical, unreasonable, and irrational intent or purpose to the legislature. Surely, when considering codification of our UPCCRA, the legislature knew that:
(a) a right of action may not be revived by the legislature after it has been barred by the statute of limitations, see generally; 51 Am.Jur.2d, Limitation of Actions, § 46 (1970);
(b) the enumeration of exceptions to the time limitations of the UPCCRA by implication excluded all others, see generally 51 Am.Jur.2d, Limitation of Actions, § 57 (1970);
(c) the rule that courts will not read exceptions into a statute of limitations applies to persons of mental incompetency or incapacity, see generally 51 Am.Jur.2d, Limitation of Actions, § 186 (1970); and
(d) a time limitations statute containing no exception in favor of persons under legal disability runs against the right of action existing in favor of such person, and, upon the expiration of the limitations period, bars the right to sue to the same extent and with the same effect as if he or she were a person sui juris, see generally 51 Am.Jur.2d, Limitation of Actions, § 178 (1970).
The primary purpose of statutory time limitations is to compel the exercise of a right of action within a reasonable time. These statutes are founded upon the general experience of society that valid claims will be promptly pursued and not allowed to remain neglected. They are designed to suppress assertion of false and stale claims, when evidence has been lost, memories have faded, witnesses are unavailable, or facts are incapable of production because of the lapse of time.
Accordingly, the fact that a barred claim is a just one or has the sanction of a moral obligation does not exempt it from the limitation period. These statutes of repose apply with full force to all claims and courts cannot refuse to give the statute effect merely because it seems to operate harshly in a given case. The establishment of these time boundaries is a legislative *1318 prerogative. That body has the right to fix reasonable periods within which an action shall be brought and, within its sound discretion, determine the limitation period. See generally 51 Am.Jur.2d, Limitation of Actions, §§ 12, 17, 18, 19 (1970). The legislature likewise has the right and power to exclude exceptions in the case of persons non compos mentis. 51 Am.Jur.2d, Limitation of Actions, § 186 (1970); Kirwan v. State, 31 Conn. Supp. 46, 320 A.2d 837, 839 (1974). We are not aware of any authority which holds that a post-conviction claim of incompetency may not be subject to reasonable time constraints.
Deficiencies, if such there should be, in statutes of limitation should be remedied by the legislature. It should not be the province or function of this court to intrude upon an area peculiarly within the channel of legislative action. In the end, we hold the savings clause of § 15-1-59 inapplicable, and Cole's claims time barred by the applicable provision of the Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-5(2) (Supp. 1991).

III.

DID THE UPCCRA STATUTE OF LIMITATIONS EFFECTIVELY SUSPEND THE WRIT OF HABEAS CORPUS IN VIOLATION OF THE MISSISSIPPI CONSTITUTION of 1890 (ART. 3, §§ 14 and 21), AND THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION)?
Cole relies on language set out in the concurring opinion of Freelon v. State, 569 So.2d 1168, 1170 (Miss. 1990). In Freelon, a petition to set aside a 1977 guilty plea was filed in 1989. The Circuit Court denied relief and mailed Freelon a copy of the order. Freelon did not receive copy of the order within time to perfect an appeal. The Circuit Court subsequently denied his motion for an out-of-time appeal. We affirmed because the petition was time barred when originally filed, and nothing could be accomplished by granting an out-of-time appeal from a trial court ruling on a time barred petition. The concurring opinion confirmed that the cause should be affirmed because Freelon made no showing that he was entitled to an out-of-time appeal, and stated:
I write because I fear the opinion may be read by some as deciding a proposition which has been neither raised nor litigated and is not necessary to the decision today.
In my view, the enforceability of the three-year statute of limitations in the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-5(2) (Supp. 1990), is highly problematical. It likely constitutes a suspension of the writ of habeas corpus in violation of Miss. Const. Art. 3, § 21 (1890). The question was before us in Reynolds v. State, 521 So.2d 914, 915 (Miss. 1988), but we did not decide it because the complaining prisoner lacked standing.
This gratuitous language was not necessary for the Freelon decision, and expresses a mere generalization of the author's concept of legitimate boundaries for time restrictions in post-conviction cases. It cannot be used as a spring board to hold this portion of our legislative enactment unconstitutional. In this case, Cole failed to file his claim within the time provided in our UPCCRA. He is not exempted from reasonable time constraints because of his incompetency. Unless this portion of the enactment is unconstitutional, he is procedurally barred.
This precise issue was addressed in Davis v. State, 443 N.W.2d 707 (Iowa 1989), where the Iowa court considered a charge that the three year statute of limitations in their post-conviction relief act violated Iowa's Constitution. In rejecting this claim, the Iowa court stated:
The thrust of appellant's argument is that postconviction relief, when utilized as a substitute remedy for habeas corpus, may not be limited by a statute of limitations without violating the prohibition against suspending the writ. We do not agree.
[T]he legislature may impose reasonable restriction upon the exercise of a constitutional right. Emberton v. County of *1319 San Diego, 186 Cal. App.3d 268, 271, 230 Cal. Rptr. 572, 574 (1986), cert. denied, 481 U.S. 1038, 107 S.Ct. 1975, 95 L.Ed.2d 815 (1987); People v. Germany, 674 P.2d 345, 450 (Colo. 1983). In State v. Berg, 237 Iowa 356, 21 N.W.2d 777 (1946), we stated:
Legislatures may pass laws regulating, within reasonable limits, the mode in which rights secured to the subject by bills of right and constitutions shall be enjoyed, and if the subject neglects to comply with these regulations he thereby waives this constitutional privileges.

Id. at 361, 21 N.W.2d at 780. Such reasonable regulations are proper so long as no constitutional right is materially impaired. Schloemer v. Uhlenhopp, 237 Iowa 279, 282, 21 N.W.2d 457, 458 (1946).
This restriction involves the time period to commence the action. It is a well-settled principle that a state may attach reasonable time limitations to the assertion of federal constitutional rights. United States v. Randolph, 262 F.2d 10, 12 (7th Cir.1958), Cert. denied, 359 U.S. 1004, 79 S.Ct. 1143, 3 L.Ed.2d 1032 (1959) (citing Brown v. Allen, 344 U.S. 443, 486, 73 S.Ct. 397, 422, 97 L.Ed. 469, 504 (1953)). We conclude that a time limitation also may be placed on the exercise of a state constitutional right.
Furthermore, statutes of limitations speak to matters of remedy and procedure, rather than the destruction of fundamental rights. State ex rel. Krupke v. Witkowski, 256 N.W.2d 216, 224 (Iowa 1977); Presbytery of Southeast Iowa v. Harris, 226 N.W.2d 232, 242 (Iowa), cert. denied, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 48 (1975). Here, appellant had a remedy; he had a three-year opportunity to challenge his criminal conviction. By failing to exercise that remedy, he effectively waived his right to challenge his conviction. See Randolph, 262 F.2d at 12.
For the reasons stated, we hold that the three-year limitation contained in section 663A.3 does not violate the constitutional prohibition against the suspension of the writ of habeas corpus.
443 N.W.2d at 709-10.
The time limitations provisions of our UPCCRA are almost identical with those in Iowa. Our statute, like Iowa's, does not work an unconstitutional suspension of habeas corpus.
Further, in challenging the 1957 guilty plea, Cole offers no excuse or justification, other than his incompetence, for the 33 year delay in seeking post-conviction relief. The lapse of such an extended period of time without some explanation of justification in seeking post-conviction relief is sufficient in itself to time bar the claim.
In McElrath v. State, 276 S.C. 282, 277 S.E.2d 890 (1981), the South Carolina court considered a post-conviction relief claim from a conviction and sentence more than seventeen (17) years old. In affirming denial of the application because laches barred the claim, the court stated:
In 1959 appellant Johnnie McElrath was found guilty of escape, robbery and larceny during the fall term of the Court of General Sessions for Sumter County. He was sentenced to a one year period of confinement for the robbery and larceny offenses and a concurrent term of nine months for escape. Appellant now seeks relief from these convictions on the ground he was an indigent not represented by counsel. See Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963), applying the appointed counsel requirement of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) retroactively.
The instant application was filed by appellant some seventeen years after his sentences on the challenged convictions had run, and while serving a four-year term for an unrelated crime.
We concur with the trial judge's finding that laches bars appellant's claim for collateral relief from conviction and sentence now more than twenty years old. In the absence of some explanation or justification for delay in seeking post conviction relief as in this case, the federal *1320 courts have held delays of seventeen years, Johnson v. Riddle, 562 F.2d 312 (4th Cir.1977), and fifteen years, Honeycutt v. Ward, 612 F.2d 36 (2nd Cir. 1979), are sufficient time bars. Reasonable diligence in processing claims for relief is not an unjust, or unconstitutional, requirement in cases of this sort. The court in Honeycutt v. Ward, ibid at 42, imposed it thusly:
"While it is important that one convicted of crime in violation of constitutional principles should be accorded relief, it is also important that reasonable diligence be required in order that litigation may one day be at an end. Rule 9(a) (of the federal habeas corpus act) guards the state's legitimate expectation that it will not be called upon without due cause, to defend the integrity of convictions that occurred many years ago, where records and witnesses are no longer available."
277 S.E.2d at 890-91. This claim has no merit.

IV.

DO THE INTERVENING DECISIONS OF JOHNSON V. MISSISSIPPI AND JOHNSON V. STATE EXCEPT COLE'S PETITION FROM THE UPCCRA STATUTE OF LIMITATIONS?
Cole maintains that the cases of Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) and Johnson v. State, 547 So.2d 59 (Miss. 1989) are intervening decisions which would have actually adversely affected the outcome of his conviction and sentence, and thus except his present petition from the time bar. Miss. Code Ann. § 99-39-5(2) (Supp. 1991). We disagree.
The intervening decision contemplated by the UPCCRA is one which would affect the outcome of the 1957 conviction or sentence presently under attack by Cole. It provides an exception to the time bar in "those cases in which the prisoner can demonstrate either that there has been an intervening decision of the supreme court of either the state of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence ..." The Johnson decisions do not affect, adverse or otherwise, the outcome of Cole's 1957 manslaughter conviction or sentence. Neither decision concerns the method for attacking a prior conviction, and neither decision changes the law regarding any aspect of Cole's entry of a guilty plea in this case.

V.

IS COLE ENTITLED TO AN EVIDENTIARY HEARING?
Cole's final claim focuses on his alleged right to an evidentiary hearing. He states he was without benefit of counsel at the time, and relies on our pronouncements in Billiot v. State, 515 So.2d 1234, 1237 (Miss. 1987) and Neal v. State, 525 So.2d 1279 (Miss. 1987) to the effect that he is entitled to an in-court opportunity to prove his claim if the pleadings meet the requirements of the act and presents a claim procedurally alive substantially showing denial of a state or federal right. These pronouncements have been followed in subsequent cases. See Myers v. State, 583 So.2d 174 (Miss. 1991); Harris v. State, 578 So.2d 617, 619 (Miss. 1991); Wright v. State, 577 So.2d 387 (Miss. 1991).
We have analogized the Court's position when faced with a petition meeting pleading requirements with that of a court in a civil proceeding considering a motion for summary judgment. Neal, 525 So.2d at 1281; Harris, 578 So.2d at 619; Wright, 577 So.2d at 389; Billiot, 515 So.2d at 1237. There is a distinction, however, in that section 99-39-11 of our UPCCRA provides that the trial judge shall examine not only the pleadings, but also files, records, transcripts and correspondence relating to the judgment under attack as well as prior proceedings in the case in making his determination.
In making this examination, the Circuit Court ascertained that the official court minutes of the proceedings leading up to the judgment under attack showed that *1321 Cole was represented by counsel during the proceedings, and his pleadings are insufficient to create a factual issue disputing the verity imported to official records. In its Opinion and Order, the Circuit Court stated:
[T]he Court finds the following facts and circumstances existed in regard to the guilty plea(s) entered in 1957... . It is clear from a review of the official minute books of this Court that the inclusion of language indicating that a defendant was represented by counsel was not a mere formality entered in every case. This becomes apparent when all the entries are read. The records reflect that the inclusion of the Court's finding that certain defendants were represented by counsel was not a mere formality, but was only entered when a defendant was actually represented by counsel.
[T]he Minutes clearly state that petitioner was represented by counsel. The entry regarding the January 21, 1957, guilty plea to manslaughter in Cause No. 5052 is found on page 93 of Minute Book 14 of the Circuit Court of Coahoma County, Mississippi, plainly reads that petitioner was represented by counsel... . The records of the Circuit Court of Coahoma County affirmatively demonstrate that petitioner was represented by counsel at the time he entered guilty plea(s)... .
The Circuit Court found that Cole's claim of denial of counsel is belied by the applicable minutes of the court. These judicial records import absolute verity and may not be impeached by parole evidence. Entrekin v. Tidewater Associated Oil Co., 203 Miss. 767, 35 So.2d 305, 307 (1948); Shows v. State, 103 Miss. 640, 60 So. 726 (1913); Clark v. State, 100 Miss. 751, 57 So. 209 (1912); Jones v. Williams, 62 Miss. 182, 184 (1884).
In Entrekin, 35 So.2d at 307, we stated:
[O]fficial records required by law to be kept, import verity. [Citations omitted]. They deal with and dispose of, property, liberty and lives of litigants. There must be an end and finality to such proceedings. To permit witnesses, years after the judicial acts have taken place, to give to triers of fact who might accept them, their oral opinions that... official records were not genuine, would produce utter chaos in judicial procedure... . [I]t would cut the throat of reason and knock the brains out of common sense.
The verity imported to the minutes of the court reciting that Cole was represented by counsel during the 1957 court proceedings may not be overcome by his affidavit disputing the record. Such affidavit is simply a written proffer of parole evidence. The rule announced by us in Entrekin clearly shows this is insufficient. See also Turner v. State, 590 So.2d 871 (Miss. 1991) (affirming summary denial of a post-conviction relief petition where the petitioner's claim was belied by the record of the plea colloquy between petitioner and the trial judge).
In addition, Cole is time barred. Under these circumstances, the Circuit Court was well within its authority in denying and dismissing Cole's motion without an evidentiary hearing.

VI.
Finding no error in the action of the Circuit Court denying and dismissing Cole's motion for post-conviction relief, we affirm.
LOWER COURT'S DENIAL AND DISMISSAL OF POST-CONVICTION RELIEF AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, and DAN M. LEE, P.JJ., and PITTMAN, J., concur.
ROBERTSON, J., dissents with separate written opinion joined by PRATHER, SULLIVAN and BANKS, JJ.
BANKS, J., dissents with separate written opinion joined by PRATHER, ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, dissenting:

I.
I respectfully dissent.
Today's post-conviction relief applicant presents a plethora of pleadings and papers. *1322 For the moment two preliminary but related issues should be dispositive. First, we ought ask whether he has been under disability of unsoundness of mind and his two-years-late claim thereby saved from the bar of the statute of limitations. I would hold the applicant has made a sufficient threshold showing that he was entitled to the opportunity to prove a statute-tolling disability at an evidentiary hearing. Toward the merits, I would hold as well the applicant may have an opportunity to prove he was incompetent to enter the guilty plea, upon which the challenged conviction has been based.

II.
On April 18, 1989, West Cole filed in the Circuit Court of Coahoma County a motion to vacate judgment, and on January 2, 1990, he amended that motion. Cole invoked the procedural vehicle of the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1, et seq. (Supp. 1984) (sometimes "the PCR Act"), and sought to vacate a now thirty-five-year-old judgment of conviction that he had committed the felony of manslaughter. Miss. Code Ann. § 99-39-5(1)(f) (Supp. 1991).
The record reflects that on January 21, 1957, Cole pled guilty to an indictment charging manslaughter in the Circuit Court of Coahoma County, upon which that Court sentenced Cole to serve one year in prison. In point of fact, Cole is now held by the State of Mississippi under a sentence of death imposed by the Circuit Court of Hinds County, Mississippi, in July of 1984 and affirmed in this Court.[1] The 1957 manslaughter conviction was proved therein as an aggravating circumstance at the sentencing phase of Cole's capital murder trial.[2]
In his application, Cole presented substantial charges, details and affidavits to the effect he was incompetent at the time of his 1957 guilty plea and that incompetence continues to this day. The State of Mississippi answered and pled, inter alia, the three-year statute of limitations found in the PCR Act, Miss. Code Ann. § 99-39-5(2) (Supp. 1991), and, by reason of the statute, the Circuit Court on August 13, 1990, entered its order dismissing Cole's application on its face. The Court added:
As the claims presented by petitioner are barred on the procedural grounds of the statute of limitations, it is unnecessary for the Court to conduct an inquiry into petitioner's mental condition to resolve this matter.
Cole now appeals to this Court.

III.
Section 99-39-5(2) was enacted April 17, 1984, and provides a prisoner's post-conviction relief plea is time-barred unless it is filed
[I]n case of a guilty plea, within three (3) years after entry of the judgment of conviction.
Established case law makes clear a defendant, convicted upon a pre-PCR Act guilty plea, had three years from that Act's effective date within which to apply for relief. See, e.g., Patterson v. State, 594 So.2d 606, 607-608, (Miss. 1992); Luckett v. State, 582 So.2d 428, 430 (Miss. 1991); Freelon v. State, 569 So.2d 1168, 1169 (Miss. 1990); Jackson v. State, 506 So.2d 994, 995 (Miss. 1987). Smith v. State, 500 So.2d 973, 975-76 (Miss. 1986); Perkins v. State, 487 So.2d 791, 792 (Miss. 1986); Odom v. State, 483 So.2d 343, 345 (Miss. 1986). By this standard, Cole's application was two years and two days too late.
*1323 Cole concedes the statute but seeks to avoid its bar on alternative grounds, principal of which is the savings clause found in Miss. Code Ann. § 15-1-59 (Supp. 1991).
If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law... .
As just noted, Cole's PCR claim accrued April 17, 1984, and he needs some savings clause to avoid limitations.
The State responds, arguing Section 15-1-59 may not toll the running of the PCR limitations clock. The State cites the law's language, which linguistically limits its protection to "any person entitled to bring any of the personal actions mentioned," and then says, after removal of the particular disability, the person theretofore disabled may bring his action "within the times in this chapter respectively limited." The State says the PCR Act is not a "personal action mentioned," nor is it found within "this chapter."
The savings clause at issue appears in Chapter 1, Title 15 of the Mississippi Code of 1972. The chapter is entitled "Limitation of Actions" and contains in it many familiar statutes of limitations. Yet more than a few limitations statutes exist over and above those found in Title 15, Chapter 1, and why these statutes have not been at least cross-referenced to Title 15, Chapter 1, is not clear. The other day we considered the one-year statute of limitations in our Right To Farm Act, which is codified over in Section 95-3-29(1). Bowen v. Flaherty, 601 So.2d 860, (Miss. 1992) (not yet reported). The net effect on the rule urged upon us would be that the savings clause has no force or effect outside Title 15, Chapter 1. I would reject so narrow an approach, for reasons I trust are apparent.
There is an important perspective. The legislature enacted the Mississippi Code of 1972 and provided that it be structured and divided by titles, chapters, and sections. See Miss. Laws, ch. 394 (1972). That Code included Section 15-1-59 and the "this chapter" wording here at issue. Thereafter, the legislature enacted the PCR Act. Miss. Laws, ch. 378 (1974). Section 3(2) of that Act is the three-year statute of limitations. Nothing in the PCR Act spoke to where or how it should be codified. We have no legislative expression that Section 3(2) should  or should not be  codified with other limitations statutes in Chapter 1 of Title 15.
In fact, the Official Publisher  Lawyers Cooperative Publishing Company  has created a new chapter  Chapter 39  in Title 99 and has codified Section 3(2) as Section 99-39-5(2). It could as easily have taken Section 3(2) and placed it with (many) other limitations statutes in Chapter 1 of Title 15. The point is, nothing told the Official Publisher what to do, and I trust it is beyond cavil that the Publisher has no power to infuse meaning into new enactments by placing them in this code chapter or that. The Publisher's codification decision is without legal consequence.
If the rule tolling limitations during incompetency were found in our cases, I doubt we would not hesitate to enforce it in all cases legally analogous. The rule of relevant resemblances and the traditional imperative that we seek coherence in principle would command no less. Such is the nature of the common law process. That today's rule is in statutory form augers no change in process. The materials employed as the basis of deliberation and adjudication are similar, save only their formal source. Instead of precedent and case law analyses, the statute is available. But like a common law rule, the statutory rule remains only a point of departure, an analogy, although an exceptionally informative and persuasive and illuminating analogy. This is so because it has been made in the principal policy-making body of our government: the legislature. See J.L. Teel Co., Inc. v. Houston United Sales, Inc., 491 So.2d 851, 857 (Miss. 1986).
This is no mere theory. Our law has repeatedly shielded incompetents from suggestions they have waived their rights and *1324 have done so without benefit of statute. See Johnson v. Howell, 592 So.2d 998, 1001 (Miss. 1991) (citing cases). Equity protects those who cannot protect themselves, cf. Alack v. Phelps, 230 So.2d 789, 792-93 (Miss. 1970), and the rule has no less force that the parties find themselves in the circuit court, for here as elsewhere equity follows the law. We have many procedural rules to like effect and accepting similar premises. See, e.g., Rule 4(f), Miss.Sup.Ct. Rules (time for perfecting appeal does not run on "parties under disability of ... unsoundness of mind..." until disability removed).
Today's principle has another source. We have here a prisoner who argues, by reason of his incompetence, the PCR limitations statute did not run against him. His claim falls well within the general rule that a prisoner presenting a colorable claim of incompetency does not waive his right to a formal determination of his competency to stand trial by his failure to press the point prior to post-conviction proceedings. Pate v. Robinson, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815 (1966), holds this rule a function of the due process clause of the Fourteenth Amendment. Pate calls it "contradictory" to say a defendant may be
incompetent, and yet knowingly or intelligently waive his right to have the court determine his capacity to stand trial.
Pate, 383 U.S. at 384, 86 S.Ct. at 841, 15 L.Ed.2d at 821. It follows on principle that the prisoner is not defaulted where he does not raise the issue during the term of his post-conviction incompetence.
Of course, the reasons why, as a matter of policy, our law might save from the bar of limitations persons under disability of unsoundness of mind are familiar, a matter of common sense. Those policy points have force in the post-conviction realm as in more conventional civil litigation. Where a person is unable to understand his rights or manage his affairs, unfairness would naturally attend allowing the limitations statute to run. It is unreasonable to fault his failure to find and file claims he has not the competence to fathom. Law should not sanction such unfairness, absent powerful and overriding contrary considerations. As important as is the public interest in enforceability of guilty pleas and finality of criminal judgments, that interest may not override the individual's due process right to a competent competency hearing, much less force a waiver of his post-conviction procedural opportunity to test whether he enjoyed that right. Cf. Read v. State, 430 So.2d 832, 840 (Miss. 1983).
In sum, I would gather all of these  statute, case law, rules, constitutional due process  plus implicit and undergirding policies therein, and when that be done, we may only find the three-year statute of limitations in the PCR Act is tolled in favor of persons under disability of unsoundness of mind until that disability shall have been removed or terminated by law.[3]

IV.

A.
"Disability of unsoundness of mind" is a matter of fact, and I would approach the point as we do other fact matters in a PCR proceeding. Our law here requires more than a mere statement of the prisoner's position.
We have accepted the language of the Act which eschews notions of notice pleadings and requires, not only a concise statement of claims or grounds for relief but, as well, a specific statement of facts, sworn to by the petitioner, together with supporting affidavits of witnesses who will testify. Myers v. State, 583 So.2d 174, 176 (Miss. 1991), quoting Miss. Code Ann. § 99-39-9 (Supp. 1991). The Circuit Court's ultimate standard  and ours on review de novo  is that embodied in Miss. Code Ann. § 99-39-11(2) (Supp. 1991):
If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the prisoner to be notified.
*1325 Conversely, if we cannot say as much, the applicant is at least entitled to an evidentiary hearing, and so
The question before this Court is whether, on the papers and record before us, we can say with confidence that ... [Cole] will not be able to show that his plea was sufficiently involuntary that he may of right obtain vacation of the judgment of conviction entered thereon.
Myers v. State, 583 So.2d at 177; see also, Turner v. State, 590 So.2d 871, 874 (Miss. 1991); Harris v. State, 578 So.2d 617, 619-20 (Miss. 1991).
Only if we may say with confidence, on the affidavits, records and papers before us, that Cole will not be able to show that he was under disability of unsoundness of mind for at least two years and two days of the period from April 17, 1984, until April 18, 1989, may we affirm the Circuit Court's dismissal on limitations grounds.

B.
West Cole was born June 14, 1925. He has but a third grade education. In his pleadings, papers and affidavits, Cole establishes substantially that he lacks cognitive ability, is deficient in language and communications skills, memory, attention, knowledge of basic information, and particularly in his ability to understand abstract ideas. Cole suffers from organic brain syndrome, the effect of which is to further slow his mental functioning, particularly when attention, concentration and short-term memory are required. His moral development and understanding match his mental age of approximately eight to nine years.
Supporting these conclusions, we have first the affidavit of C. Gerald O'Brien, Ph.D., a licensed practicing clinical psychologist since 1977, having his office in Jackson, Mississippi. Via affidavit, Dr. O'Brien says he has personally examined Cole, that he has reviewed relevant portions of Cole's testimony during his 1984 capital murder trial, together with "other pertinent parts of his trial transcript," that he has reviewed Cole's psychological and medical history at the Mississippi State Hospital at Whitfield and at the Mississippi State Penitentiary at Parchman, and that he has reviewed Cole's "prison record and record of prior convictions." In addition, Dr. O'Brien states that he has administered to Cole a battery of tests: Wechsler Adult Intelligence Scale  Revised, Wide Range Achievement Test  Revised, Wechsler Memory Scale, and Aphasia Screening Test.
With this predicate, Dr. O'Brien has, first, offered his opinion that Cole has a full-scale intelligence quotient (I.Q.) of 51. He states that this places Cole "well within the range of persons characterized as mentally retarded," and, that this "places his functioning at the 0.08 percentile, lower than 99.92 percent of the population." Dr. O'Brien further states that Cole suffers "from an organic brain syndrome  likely a multi-infarct dementia." From these findings, Dr. O'Brien concluded that Cole was not competent to stand trial, that his
mental retardation, and the accompanying limitations on his cognitive and moral development, are substantial mitigating factors
and that
Cole's retardation would have substantially impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law at the time of the commission of the crime.
Dr. O'Brien went on to conclude that Cole lacked the capacity to understand and comprehend advice of his constitutional rights under the familiar Miranda rule[4] and otherwise.
The record reflects as well that Cole was tested and evaluated by professional personnel at the Mississippi State Hospital at Whitfield in 1984, and was found then to have a full-scale I.Q. of 59.
Cole presents the affidavit of Ronald S. Drabman, Ph.D., a clinical psychologist and professor of clinical psychology at the University *1326 of Mississippi Medical Center in Jackson. Dr. Drabman states via affidavit that he has reviewed Cole's entire record, including the report of Dr. O'Brien, and the testing at Whitfield. Dr. Drabman offers his opinion that a person within an I.Q. range of 51 to 59 is mentally retarded and that any such person would suffer diminished capacity to reason, both morally and cognitively. He states that someone with Cole's degree of retardation would have difficulty understanding his Miranda rights, "would be very limited help with a factual investigation or preparation of a defense," and "would have a great deal of difficulty understanding the vocabulary used in a court of law."
Further supporting Cole's present plea is the affidavit of Harry McBride, who possesses a masters degree from the University of Southern Mississippi in special education, specializing in mental retardation. Mr. McBride is employed by Hinds County public schools and works with the mentally retarded. He states that on August 8, 1989, he interviewed Cole at the Mississippi State Penitentiary and found him an "obviously retarded man." He found that Cole "suffers an obvious deficiency in the ability to reason," that he was unable to understand elementary explanations of his legal rights, concluding:
In my opinion, it is extremely unlikely that West Cole could be made to understand his legal rights in any fashion sufficient to help him defend himself against criminal charges.
Cole's present attorney, Dewitt L. Fortenberry, Jr., of Mendenhall, Mississippi, presents his own affidavit of December 29, 1989, which recites substantial facts and concludes:
I have grave doubts concerning West Cole's competency to participate in these proceedings. Cole is unable to meaningfully communicate with me, nor is he able to engage in rational conversation regarding his case and potential claims associated therewith.
Finally, Cole files affidavits from a number of family members. His older sister, Evelina Jackson, says Cole was "slow" and "did not do very well in school," that he "couldn't seem to learn," and that he "only went to the third or fourth grade." Another sister, Ida Lee Williams, provides an affidavit to like effect. Harry Lee, Cole's nephew, affirms that Cole "is slow in speech. He has trouble making sense over the phone ... He didn't seem to know what he was saying half the time."

C.
These affidavits cover the waterfront. They suggest Cole may not have been competent to stand trial for capital murder back in July of 1984. See Gammage v. State, 510 So.2d 802 (Miss. 1987). They suggest as well that Cole may have had evidence of a mitigating circumstance not exploited at his sentencing trial. See Miss. Code Ann. § 99-19-101(6)(f) (Supp. 1983). These points need not detain us, as they have no per se relevance to Cole's challenge to his 1957 manslaughter conviction.
Our question is whether Cole has made an adequate showing that the Circuit Court was obliged to hear his plea he suffered disability of unsoundness of mind for at least two years and two days of the June, 1984, to June, 1989, period. On this issue, we know that Cole was I.Q. tested at the Mississippi State Hospital at Whitfield in 1984 and found to have a full-scale I.Q. of 59. This, coupled with the testing done by Dr. O'Brien in 1989, and Dr. O'Brien's interpretation of his tests and, as well, as the affidavits of Dr. Drabman, special education specialist McBride, attorney Fortenberry, and his family members, more than bring Cole within the condition of the savings clause.
Of course, none of this is to say Cole would prevail, even on this preliminary point. The evidence Cole tenders would no doubt be vigorously cross-examined and might not carry the day, for on remand Cole would have to prove he satisfies the savings clause. See McClendon v. State, 539 So.2d 1375, 1377-78 (Miss. 1989). What I would hold is, Cole's present showing is such that that portion of the Circuit Court's order which denies Cole an evidentiary *1327 hearing on grounds of the three-year statute of limitation must be vacated.

D.
Cole's claim that he was incompetent at the time he entered his guilty plea in 1957 is another matter. It is true the Circuit Court did not address this claim, in light of its limitations ruling, but the point seems substantially intertwined with Cole's savings claim that he was incompetent between 1984 and 1989. The affidavits I would credit, holding Cole entitled to an evidentiary hearing on whether he was sufficiently incompetent that the PCR limitations clock did not tick against him, address as well the question whether he was incompetent in 1957. Moreover, our review of a circuit court's denial of a PCR applicant's claim for an evidentiary hearing is de novo. We suffer little from the lack of a ruling below. All things considered, including notions of judicial economy, I would speak to the point.
The legal parameters of Cole's incompetency claim are reasonably well settled. Conviction of an accused while he is legally incompetent offends due process, and this is so whether the conviction is upon trial by jury or plea of guilty. Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). It is established as well that an incompetent prisoner has no legal power to waive his right to a competency determination. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). A claim that he has been denied this right may be presented at the post-conviction stage. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Through his application, as detailed and summarized above, Cole suggests he was incompetent to proceed in 1957. See Dusky v. United States, supra; United States ex rel. Heral v. Franzen, 667 F.2d 633 (7th Cir.1981); Gammage v. State, 510 So.2d 802 (Miss. 1987).
Cole's precise claim is that in January of 1957 he was not competent to plead to the indictment charging manslaughter. He argues that he was
denied due process of law in that his guilty plea was not accompanied by a knowing and intelligent waiver of his ... rights.
He charges further that there was "no adequate determination of his competence to plead guilty." He presents in support the affidavits and other matters noted in Section IV(B) above. The showing there made is facially impressive. I have reviewed the State's brief and find nothing in it suggesting it doubts Cole has presented a colorable claim upon which he is entitled to a hearing.
I recognize the difficulties of litigating an individual's state of mind thirty-five years previously. I can only emphasize that this is a matter where Cole would bear the burden of proof, McClendon v. State, 539 So.2d at 1377-78, so that the handicap is his in the first instance.

V.
I would vacate the order of the Circuit Court entered August 13, 1990, and remand this case for further proceedings consistent herewith, as though the aforesaid order had never been entered, and direct that the Circuit Court hear and adjudge
(a) Whether Cole was under disability of unsoundness of mind for any part of the time from April 17, 1984, through and including April 18, 1989, and,
(b) If necessary, whether Cole was competent to enter a guilty plea and waive his rights back in 1957.
PRATHER, SULLIVAN and BANKS, JJ., concur in this opinion.
BANKS, Justice, dissenting:
I am in agreement with the views expressed by Justice Robertson in his dissent. I am also of the opinion that West Cole's petition for relief under Miss. Code Ann. § 99-39-1, et seq., (Supp. 1991), benefits from intervening authority and that the application of an absolute time bar is prohibited by the United States and the Mississippi Constitutions.

*1328 I.
Cole contends that the Mississippi Uniform Post-Conviction Collateral Relief Act (hereinafter "Act"), codified as Miss. Code Ann. § 99-39-1 et seq., insofar as it imposes an inflexible time bar of three years, is unconstitutional as violative of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States or a suspension of the writ of habeas corpus in violation the Mississippi Constitution[1]. The majority says that there is no constitutional violation and cites for support, Davis v. State, 443 N.W.2d 707 (Iowa 1989). I disagree.
We are not limited to the State of Iowa for expressions concerning this subject. Many courts have addressed the issue of the constitutionality of limitations periods in post-conviction statutes.
In People v. Germany, 674 P.2d 345, 353 (Colo. 1983), the Colorado Supreme Court held that the post-conviction statute involved violated due process of law under both the United States and Colorado Constitutions. The Court stated,
The very idea of due process includes a meaningful opportunity for a criminally accused to challenge assertedly unconstitutional evidence before it may be used against him to prove guilt or enhance punishment in a pending prosecution. Section 14-4-502, however, creates what is virtually an unconditional time bar to the vindication of constitutional claims even when the failure to assert an earlier claim was the result of circumstance other than culpable neglect. We are satisfied that due process protections of the United States and Colorado Constitutions prevent the state from employing a system of forfeiture with respect to constitutional claims solely on the basis of a time bar, without affording an accused meaningful opportunity to establish that the failure to make a timely challenge was the result of circumstance amounting to justifiable excuse or excusable neglect.
In accord is Marshall v. Warden, Nevada State Prison, 83 Nev. 442, 434 P.2d 437, 439-40 (1967), where the Court stated:
the legislature stepped out of bounds when it provided in Section 317 that the new post-conviction remedy `shall be used exclusively' in place of other remedies heretofore available for challenging the validity of a conviction or sentence. The constitutional writ of habeas corpus heretofore used, within defined limits, as a post-conviction procedure to challenge the validity of a conviction, may not be abolished as a post-conviction remedy by legislative fiat. To this extent, Section 317 is unconstitutional.
In Jensen v. State, 373 N.W.2d 894, 899 (N.D. 1985), the North Dakota Supreme Court stated that an applicant should employ the procedure of the Uniform Act in order to insure a complete record for review. The Uniform Act
was never intended to create a new remedy to wholly replace habeas corpus and the other common law writs. Rather, the Uniform Act creates a procedure which implements the writ of habeas corpus and provides an opportunity for more extensive development of the issues and a more complete record for review.
In Oregon, the post-conviction relief statute was upheld because it merely codified habeas corpus.
Post-conviction relief is not a suspension of the writ of habeas corpus.
* * * * * *
The drafters of the legislation stated that the purpose of this section is to ensure that post-conviction relief will be as broad as habeas corpus relief and thereby to avoid constitutional problems.
*1329 Atkeson v. Cupp, 68 Or. App. 196, 680 P.2d 722, 724 (1984).
In other cases, post-conviction statutes have been upheld where there were no time constraints and the statute is as broad as habeas corpus, which it is intended to encompass. Wiglesworth v. Wyrick, 531 S.W.2d 713 (Mo. 1976); accord McGuire v. Waiting State Farm, 229 N.W.2d 211, 216 (N.D. 1979), n. 3 (providing that if the post-conviction procedure were construed to abolish or unduly restrict the original habeas corpus jurisdiction of this Court it would be, to that extent, unconstitutional). Limitations periods have also withstood constitutional attack where the statute has been construed to contain an excuse proviso or the petitioner is allowed to show cause why he has not abided by the time constraints as with laches. In Davis, on which the majority relies the court construed the Iowa statute to provide the appellant "the right to raise the issue of justifiable excuse for the delay." 443 N.W.2d at 710. Unlike Cole, Davis had offered no excuse for his delay. Id.
Where deprivation of life or liberty is a direct product of a conviction offensive to the constitution of our state or nation, due process demands a remedy unfettered by an absolute time limitation. State v. Blackford Circuit Court, 229 Ind. 3, 95 N.E.2d 556, 561 (1950) As recognized by the Supreme Court of Indiana,
[t]he better rule would be for the trial judge in each case to try all the facts presented to him by the petition for a writ, then if, from such presentation of evidence, it occurs to the trial judge that sufficient time has elapsed since the sentence of the man and that the man, in fact, had sufficient knowledge of his rights, the petition should be denied for lack of diligence.
Id. That court invalidated Indiana's five year statute of limitations on coram nobis.
We should hold that the three-year period of limitations, as prescribed in the Uniform Post-Conviction Collateral Relief Act, insofar as it applies to alleged due process violations, operates to create a presumption of diligence for that period which evaporates upon expiration. Upon expiration of the three-year period, the burden will be upon the petitioner to demonstrate a reasonable excuse for the delay and the doctrine of laches will obtain.
Here the majority jumps the gun on the laches issue and attempts to decide it without benefit of a hearing below. In the case upon which it relies, McElrath v. State, 276 S.C. 282, 277 S.E.2d 890 (1981), it is clear that the trial court made findings on the issue. In Allen v. Mayer, 587 So.2d 255, 260 (Miss. 1991), we outlined the three independent criteria that must be shown before laches will operate as a bar to litigation. The party invoking the doctrine must demonstrate, (1) delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted. Id. at 260. Whether or not laches operates as a bar is a question addressed to the discretion of the trial court. Id. Pleading laches, affirmatively, usually calls for a full hearing on the merits. Id.
This case should be remanded for a determination of the merits of Cole's claim that he suffered unsoundness of mind excusing delay and, if so, whether there was sufficient prejudice for imposition of the bar of laches.

II.
Cole also contends Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) and Johnson v. State, 547 So.2d 59 (Miss. 1989), constitute intervening authority, thus permitting him to bring this action after the statute of limitations has run.
Miss. Code Ann. § 99-39-5(2) provides in pertinent part:
Excepted from this three year statute of limitations are those cases in which the prisoner can demonstrate either that there has been an intervening decision of the supreme court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is *1330 of such nature that it would be practically conclusive that had such been introduced at trial it would have cause a different result in the conviction or sentence. Id.

A previous conviction of a capital offense or conviction of a felony involving the use or threat of violence to a person is admissible as an aggravating circumstance in any capital proceeding. Miss. Code Ann. § 99-19-101(5)(b). In addition, our state requires a capital jury to unanimously find that any mitigating circumstance outweighs aggravating circumstances as a prerequisite to returning a sentence of death. Miss. Code Ann. § 99-19-101(3)(c).
The United States Supreme Court held for the first time in Johnson v. Mississippi, 486 U.S. 578, 584, 108 S.Ct. 1981, 1986, 100 L.Ed.2d 575, 584, that pursuant to the Eighth Amendment's prohibition against cruel and unusual punishment, reversal of a conviction used as an aggravating factor required a re-examination of a Mississippi death sentence. Id. There can be little question then that Cole had no reason to know that an attack on his 1957 conviction would be more than an exercise in futility prior to Johnson v. Mississippi. The more serious question, and that put by the majority, is, whether in light of the fact that the decision in Johnson v. Mississippi relates to Cole's death penalty as opposed to his 1957 guilty plea, that decision can be viewed as intervening within the meaning of the statute. That is, did the decision adversely affect the "outcome" of his "conviction or sentence." Miss. Code Ann. § 99-39-5(i).
The statute may be read, as the majority does, to restrict intervening decisions to those which have an impact on the conviction and sentence under attack. On the other hand, it can be construed to include a decision adversely affecting the relationship between the conviction under attack and the sentence presently being served, where the conviction under attack is truly given effect. In either instance, the effect is that the petitioner is given an opportunity for relief from whatever adversity is imposed by virtue of the allegedly tainted action. In the first instance, the taint is recognized by virtue of the new decision. In the second instance, the relationship between the taint and the opportunity for relief from its continuing effect is made visible. Seeing no principled distinction, I would hold that where, as here, there is an intervening decision which makes an attack on a previous conviction, if successful, availing with respect to the present effects of that conviction, the decision is intervening within the statute.

III.
Finally, I add a few words to what Justice Robertson has had to say on the subject of tolling the statute of limitations in favor of persons of unsound mind. The majority contends that the the statutory savings in favor of such persons would have ended for Cole in 1978. This is a misreading of the statute. Miss. Code Ann. § 15-1-59. While the saving can never extend beyond 21 years, the saving cannot begin to run until the statute would otherwise begin to run and the action is not barred until after the savings and the statute combined have run. That is, at the expiration of the disability or 21 years, whichever comes first, the period prescribed in the statute of limitations is relieved from the toll and begins to run. Pannell v. Glidewell, 146 Miss. 565, 569-70, 111 So. 571, 573 (1927) The action is barred, then, at the expiration of the statutory period. In the instant case the statute did not begin to run on convictions prior to 1984 until 1984. Miss. Code Ann. § 99-39-5(2) We are still well within the 21-year savings period.
I find the net effect of the logic propounded by the trial court and embraced by the majority regarding the application of a three-year time bar to be truly Kafkaesque: for Cole to avoid the time bar, he must show he is incompetent and thus qualify for a time extension, yet Cole has been denied the opportunity to make such a showing on the grounds that he has failed to comply with the time bar. In this sense, this is not a case where the door is locked *1331 and the petitioner may not enter. This is a case where there is no door at all.

IV.
For the reasons stated above, and those stated by Justice Robertson, I respectfully dissent.
PRATHER, ROBERTSON and SULLIVAN, JJ., join this dissent.
NOTES
[1] Two other prior convictions were also introduced at Cole's capital murder trial  a January 25, 1963 conviction for attempted rape, and a January 25, 1963 conviction for armed robbery. Cole has collaterally attacked the 1963 conviction for attempted rape, and the appeal is pending before this Court in the companion case of Cole v. State, 608 So.2d 1331.
[1] Cole v. State, 525 So.2d 365 (1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988), reh'g denied, 488 U.S. 1023, 109 S.Ct. 826, 102 L.Ed.2d 815 (1989).
[2] West Cole's conviction records for manslaughter (No. 5082, Coahoma Cty.Cir.Ct., Jan. 6, 1957), armed robbery (No. 5275, Coahoma Cty. Cir.Ct., Jan. 25, 1963) and attempted rape (No. 5280, Coahoma Cty.Cir.Ct., Jan. 25, 1963) were introduced in the 1984 trial during the sentencing phase. (Tr. 1260, No. DP-58) The sentencing instructions allowed the jury to consider as an aggravating circumstance whether the "defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person." (T. 1424, No. DP-58)
[3] Foster v. Yazoo & Mississippi Valley Railroad Company, 72 Miss. 886, 889, 18 So. 380, 381 (1895), is too dated and cryptic to embarrass the present point.
[4] See Rule 1.03, Miss.Unif.Crim.R.Cir.Ct.Prac. (1979); Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966).
[1] Miss. Const. art. 3, § 21, provides that the "privilege of the writ of habeas corpus shall not be suspended, unless when in the case of rebellion or invasion, the public safety may require it, nor ever without the authority of the legislature. Id.

This issue was presented to this Court in Aldridge v. State, 524 So.2d 330, 331 (Miss. 1988) and Reynolds v. State, 521 So.2d 914, 915-16 (Miss. 1988). In both opinions, the Court declined the invitation to address the questions presented as the appellant's were without standing to challenge the provisions of the Act.