230 So.2d 789 (1970)
Sam ALACK, Virgil Hamilton, Admr. of the Estate of John B. Phelps, Dec'd and Virgil Hamilton, Guardian of Janet Carol Phelps, a Minor
v.
Thelma M. PHELPS, Guardian of Ronny Gene Phelps and Johnny Eugene Phelps, Minors.
No. 45531.
Supreme Court of Mississippi.
January 26, 1970.
Lipscomb, Barksdale, Steen & Caraway, Jackson, for appellants.
Phillips & White, Magnolia, for appellee.
*790 ROBERTSON, Justice.
An interlocutory appeal was granted by the Chancery Court of Pike County, Mississippi, so that a final answer could be made to the question of whether minor children of a deceased natural father, who were adopted by others, would inherit from their natural father. Another question to be answered is whether these adopted children, through their guardian, have a right to bring suit under the wrongful death statute for the death of their father, where suit was brought by the administrator of the father's estate and settled before trial, the proceeds of the settlement being paid to the guardian of a minor child of a second marriage of the natural father.
The chancery court overruled a plea in bar interposed by appellant, Sam Alack, which plea set up the adoption of the twin boys by their paternal grandparents, and also asserted that a full settlement had been made and the suit of the administrator brought under the wrongful death statute dismissed.
On July 20, 1967, John B. Phelps was killed in a head-on collision with Sam Alack. Phelps was 26 years of age at the time of his death. His second wife, Linda, died later of injuries suffered in this accident. His 2 year old daughter, Janet Carol Phelps, a child of the second marriage, was also injured in this accident.
Virgil Hamilton, Administrator of the Estate of John B. Phelps, and also Guardian of Janet Carol Phelps, brought suit against Sam Alack for the wrongful death of John B. Phelps. The suit was transferred to Federal District Court because Alack was a resident citizen of Louisiana.
The Chancery Court of Pike County in approving a compromise settlement of $40,000, also found that "Janet Carol Phelps is the sole wrongful death beneficiary of John B. Phelps," and directed the guardian to deposit the $40,000 in his guardianship account. The chancery court authorized the guardian to dismiss with prejudice *791 the Federal District Court suit, and this was done by order entered on the minutes.
Thelma M. Phelps, the paternal grandmother and the adoptive mother, was appointed guardian of Ronny Gene Phelps and Johnny Eugene Phelps, twin boys born on August 10, 1961, to John B. Phelps and his first wife, Nola Phelps. The mother died when these children were born. The little boys and their father continued to live with the grandparents and when they were about 13 months old, at the insistence of their father, and upon his promise to help support them, the grandparents, C.E. Phelps and his wife, Thelma M. Phelps, adopted their two grandsons.
The Decree of Adoption, dated September 21, 1962, tracked Section 1269-06, Misissippi Code of 1942 Annotated (Supp. 1968) and among other things, provided:
"It is further ordered, adjudged and decreed that said adopting parents and any other children of said adopting parents adopted or otherwise shall inherit from said children as though they were natural born children and natural born brothers and sisters and in all respects as if said childen had been born to said adopting parents.
"It is further ordered, adjudged and decreed that said adopting parents and adopting kindred are vested with all of the powers, duties, privileges, obligations and rights existing by virtue of Section 1453 of the Code of 1942 as amended and as particularly amended by the aforesaid Act of the Extraordinary session of the Legislature of the State of Mississippi of 1955.
"It is further ordered, adjudged and decreed that the Natural parent of said children and the natural kindred of said children shall not inherit by or through said children and the said childrens' names be and remain the same as that hereinabove set forth by which names they shall hereafter be known and called."
Having been authorized by the chancery court so to do, Thelma M. Phelps, as Guardian of Ronny Gene Phelps and Johnny Eugene Phelps, Minors, brought suit against Sam Alack, Virgil Hamilton, Administrator of the Estate of John B. Phelps, deceased, and Virgil Hamilton, Guardian of Janet Carol Phelps, a Minor.
Hamilton, as Administrator and Guardian, answered that by virtue of the adoption of Ronny and Johnny Phelps that under Section 1453, the wrongful death statute, they were no longer heirs of their deceased natural father. Alack interposed the same defenses by way of special plea, and also asserted that the $40,000 settlement was a full, fair and reasonable settlement, that said monies are in the guardian's account and are subject to proportionate distribution to these two minors, if the Court should hold that they are heirs of their deceased father.
The guardian of Ronny and Johnny Phelps answered that the adoption of Ronny and Johnny Phelps was at the sole insistence and instigation of their father, John B. Phelps, and upon his promise to aid and assist in every way possible in their rearing, support, maintenance and education. The guardian further answered that the chancellor hearing the adoption proceeding knew that C.E. Phelps had heart trouble and exacted the same promise of John B. Phelps, the father of said children, at the hearing. The guardian charged collusion and conspiracy between Alack and Hamilton, Administrator and Guardian. Guardian Phelps also contended that the alleged settlement on its face covered only the one claim of Janet Carol Phelps, the minor child of John B. Phelps by his second marriage.
The chancellor heard the special plea in bar separately and ruled that Ronny and Johnny Phelps, even though adopted by their paternal grandparents, were still entitled to inherit from their natural father, and were not foreclosed from asserting *792 their rights under the wrongful death statute. Sam Alack appealed.
Adoption is purely a creature of statute; it was unknown at common law. 2 Am.Jur.2d Adoption section 2 page 861 (1962) expresses it in this way:
"In this country the right or the power to create, by a legal proceeding, the relationship of parent and child between persons not so related by nature exists only by virtue of a statutory provision prescribing the conditions and the procedure by which adoption may be made effective. Not only the right of adoption but the legal consequences of adoption are of statutory origin." (emphasis added).
Section 1269-06, Mississippi Code of 1942 Annotated (Supp. 1968), sets forth what the final decree of adoption shall contain and the effect of such a decree:

"The final decree shall adjudicate, in addition to such other provisions as may be found by the court to be proper for the protection of the interests of the child, and its effect unless otherwise specifically provided, shall be that (a) the child shall inherit from and through the adopting parents and shall likewise inherit from the other children of the adopting parents to the same extent and under the same conditions as provided for the inheritance between brothers and sisters of the full blood by the laws of descent and distribution of the State of Mississippi, and that the adopting parents and their other children shall inherit from the child, just as if such child had been born to the adopting parents in lawful wedlock; (b) the child and the adopting parents and adoptive kindred are vested with all of the rights, powers, duties and obligations, respectively, as if such child had been born to the adopting parents in lawful wedlock, including all rights existing by virtue of section 1453 of the Code of 1942; provided, however, that inheritance by or from the adopted child shall be governed by sub-section (a) above; (c) that the name of the child shall be changed if desired; and (d) that the natural parents and natural kindred of the child shall not inherit by or through the child except as to a natural parent who is the spouse of the adopting parent, and all parental rights of the natural parent or parents shall be terminated, except as to a natural parent who is the spouse of the adopting parent." (emphasis added).
Mississippi early reached the decision that, in the absence of express statutory prohibition, the adopted child will inherit from both the natural and adoptive parents. In Sledge et al. v. Floyd, 139 Miss. 398, 104 So. 163 (1925), the Court said:
"The statutes provide for inheritance by children from their parents, and we see no reason why a child adopted by another should not continue to inherit from its blood relations in the absence of a statute or decree specifically providing to the contrary. * * * [139 Miss. at 407, 104 So. at 165.]
"But nothing in the adoption proceedings themselves nor in the statutes authorizing them deprives a child of the right to inherit from its blood relatives. We do not think the statute intended to deprive children of their rights to inherit from their natural parents and blood relatives. To do so would raise grave questions where a child having expectations should be adopted against its consent or without its power to consent during the tender years of minority and thus be deprived of benefits.
"There is ample authority for the position that a child may inherit from both natural and adopted parents, and we prefer to align ourselves with that line of authorities which so hold." 139 Miss. at 408, 104 So. at 165. (emphasis added).
We have a maxim of equity that also enters the picture, "When parties are *793 disabled equity will act for them." Griffith, Mississippi Chancery Practice 2d Ed., section 34, page 37 (1950). Children are under the disability of minority and cannot act for themselves. The equity court will protect their rights.
While the effect of a final decree of adoption is that the natural parent or parents will not inherit by or through the child, and all parental rights are terminated, Mississippi's adoption law does not state in any shape, form or fashion that the right of the child to inherit from its natural parents is terminated. We think the intent of the legislature is clear; they intended for the child to continue to inherit from his or her natural parents.
2 C.J.S. Adoption of Children § 63(c) page 454 (1936) succinctly states the applicable law in this way:
"In the absence of a statute to the contrary, although the child inherits from the adoptive parent, he still inherits from or through his blood relatives, or his natural parents. In view of the tendency of the courts to construe adoption statutes so as to benefit the child, as pointed out above in § 6 of this Title, and also, in in view of the fact that a statute severing the relation between parent and child is in derogation of common law and should for that reason be strictly construed, it has been held that an adoption statute providing that the natural parents shall be divested of all legal rights and obligations with respect to such child should not be construed so as to deprive the child of its right to inherit from or through its natural parents. Under such a statute it cannot be assumed that the adopted child cannot inherit from its natural parent unless there is an express legislative declaration to that effect."
There is no express legislative declaration to that effect in Mississippi's adoption law.
Does the bringing of an action under the wrongful death statute by the Administrator of the Estate of John B. Phelps, deceased, which action was compromised and settled solely for the benefit of the minor child of the second marriage, bar the guardian of Ronny and Johnny Phelps, minors, from bringing action in their behalf? We think not.
Section 1453, Mississippi Code of 1942 Annotated (Supp. 1968) provides, in part:
"The action for such damages may be brought in the name of the personal representative of the deceased person, for the benefit of all persons entitled under the law to recover or by widow, for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child, or in the name of a child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or a brother for the death of a brother, or all parties interested may join in the suit, and there shall be but one suit for the same death which shall ensue for the benefit of all parties concerned, but the determination of such suit shall not bar another action unless it be decided on its merits. In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind of the decedent and all damages of every kind to any and all parties interested in the suit." (emphasis added).
Ronny and Johnny Phelps are interested parties; yet they were not made parties, and their interests and damages to them, were admittedly not considered in the settlement of the action brought.
Was this suit decided on the merits? We think not. A jury did not determine what damages were just and due to all the parties interested. This action was settled without trial.
This question was posed in the early case of Sudberry v. Meridian Fertilizer Factory, 106 Miss. 744, 64 So. 723 (1914). The *794 language of the wrongful death statute in 1914 was essentially the same as it is today. In Sudberry, the Court had this to say:
"[B]ut the determination of such suit shall not bar another action unless it be decided on its merits. In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit." [106 Miss. at 752, 64 So. at 723].
* * * * * *
"It is unnecessary to reach the conclusion that any actual fraud was intended in order to condemn the proceedings in question. If the statute is designed to protect the interest of all parties, and to this end requires a judicial determination of the rights of absent relatives, the judgment pleaded will not bar this action.
"It is believed that it was the purpose of the Legislature to prevent a multiplicity of suits, and to insure a square deal to all interested parties not participating in the trial of the case.

"One can sue for and conclude all; but to conclude all there must be a decision  a judicial determination of the case on its merits  not merely an agreed judgment for a fixed sum absolutely insufficient to pay for killing a boy 18 years of age.
* * * * * *

"The statute, we believe, was designed to prevent one interested party from agreeing upon and collecting a sum of money, satisfactory to him, but not at all satisfactory to others, or to the merits of the case. * * *" 106 Miss. at 753-754, 64 So. at 724. (emphasis added).
A case of actual fraud was presented to this Court in Keanum v. Southern Railway Co., 151 Miss. 784, 119 So. 301 (1928). In Keanum, it was contended that a prior settlement would bar a subsequent suit. The Court thus answered this argument:
"Throughout this record and the briefs of counsel the special pleas filed in this cause are referred to as `pleas of res adjudicata,' and the proceedings in the chancery court which resulted in a decree authorizing the compromise and settlement of the right of action are referred to as `a trial of the merits of the cause of action;' but these proceedings are in no proper sense a trial of the merits of the cause, which may be pleaded in bar of a subsequent suit on the same cause of action. * * *
"* * * These replications specifically charge collusion and fraud in the institution and prosecution of these proceedings in the chancery court, and in the consummation of the compromise and the execution of the release, and we are of the opinion that these allegations of collusion and fraud are sufficiently definite to require an answer, and, if established, to avoid the decree authorizing the settlement, and the release executed in consummation thereof." 151 Miss. at 788-789, 119 So. at 302.
We do not intend to say, and we do not say, that suits cannot be compromised and settled without a trial. We do say that such settlement must be bona fide, and that the rights of, and damages to, all interested parties must be considered and settled.
Since the rights of these two little boys were not considered, and the damages to them determined, the settlement made does not bar them from asserting their rights and having their day in court. The judgment of the chancery court in overruling the plea in bar is affirmed, and this cause remanded for further hearing.
Affirmed and remanded.
ETHRIDGE, C.J., and PATTERSON, INZER and SMITH, JJ., concur.