# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00356-SCT

*IN THE MATTER OF THE DETERMINATION OF*
*WRONGFUL DEATH HEIRS OF JEFF*
*UNDERHILL, DECEASED: JOE ALEXANDER*

*v.*

*MATTHEW BRYAN DeFOREST*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2016 |
| TRIAL JUDGE: | HON. D. NEIL HARRIS, SR. |
| TRIAL COURT ATTORNEYS: | KEN R. ADCOCK |
| | REGINALD PAUL HARRION |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | REGINALD PAUL HARRION |
| ATTORNEYS FOR APPELLEE: | KEN R. ADCOCK |
| | WILLIAM C. IVISON |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 01/31/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., KING AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The instant appeal stems from Matthew Ryan DeForest's Petition for Determination of Heirs-At-Law and Wrongful Death Beneficiaries following the death of his natural father, Jeff Underhill.  Joe Alexander, Underhill's brother, filed a responsive pleading to DeForest's petition raising numerous affirmative defenses; however, the Greene County Chancery Court

held in favor of DeForest. The chancery court entered a judgment declaring DeForest to be sole heir at law for the purpose of the pending wrongful death action. We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. On July 20, 1977, Matthew Ryan Underhill was born to parents Jeff and Jenny Lee Underhill; soon thereafter Jeff and Jenny Lee divorced. Then, on October 25, 1983, Underhill voluntarily terminated his parental rights to allow Jenny Lee's then-husband, Steven Wayne DeForest, to adopt six-year-old Matthew. As a result, Matthew became Matthew Ryan DeForest. At the time of DeForest's adoption, he was a Michigan resident, and the termination of parental rights and adoption occurred in Michigan courts.

¶3. On November 3, 2015, Underhill was involved in a trucking accident in Greene County, Mississippi; Underhill died as a result. At the time of his death Underhill was unmarried, and he was a resident of Florida. Underhill owned no property in Mississippi and had no other connection to Mississippi apart from the fact that the accident and death had occurred here. DeForest filed a wrongful death complaint in the Greene County Circuit Court, and he then filed the instant petition in the chancery court to determine Underhill's heirs at law and wrongful death beneficiaries. In his petition, DeForest named Jeanne Elizabeth Tyler, Underhill's mother; Joe Alexander, Underhill's brother; Sam Underhill, Underhill's brother; Tyler Alexander, Underhill's brother; Luke Underhill, Underhill's brother; and other unknown heirs and wrongful death beneficiaries of Underhill. Of the persons listed, only Joe Alexander responded.

¶4. Alexander raised several affirmative defenses in his response, titled Affirmative Defense of Joe Alexander to the Petition for Determination of Heirs-At-Law And Wrongful Death Beneficiaries; Alternatively, Answer. He argued that DeForest's petition should be dismissed pursuant to Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted; under Mississippi Rule of Civil Procedure 12(b)(4) for insufficient process and service of process; and under Mississippi Rule of Civil Procedure 12(b)(2) for lack of jurisdiction. He also claimed a lack of due process, a lack of standing, full faith and credit, and Mississippi Rule of Civil Procedure 8(c).

¶5. After a hearing, the chancery court ruled in favor of DeForest and declared him to be Underhill's sole heir at law and wrongful death beneficiary. Alexander filed a motion for rehearing, which the chancery court denied following a hearing. Aggrieved, Alexander raises the following issues on appeal:

I. Whether the [trial c]ourt properly determined that it had personal jurisdiction over the named Respondents?

II. Whether the [trial c]ourt properly denied full faith and credit to a foreign adoption order and its underlying statutory law and common law?

III. Whether the [trial c]ourt properly determined that a non-resident, adopted adult qualifies as an heir-at-law or wrongful death beneficiary?[1]

IV. Alternatively, whether the [trial c]ourt had subject matter jurisdiction to determine heirs-at-law or wrongful death beneficiaries of a non-resident decedent who owned no real property within the State of Mississippi?

---

[1] We address Alexander's second and third issues in one section.

**STANDARD OF REVIEW**

¶6. It is settled that in reviewing appeals from chancery court, the "chancellor's findings of fact should not be interfered with unless they were 'manifestly wrong, clearly erroneous or an erroneous legal standard was applied.' However, the chancery court's interpretation and application of the law is reviewed under a de novo standard." ***Isom v. Jernigan***, 840 So. 2d 104, 106 (¶ 6) (Miss. 2003) (internal citations omitted). Jurisdiction is a question of law, which receives a de novo review on appeal. ***Entergy Miss., Inc. v. Burdette Gin Co.***, 726 So. 2d 1202, 1204-1205 (¶ 5) (Miss. 1998).

**ANALYSIS**

**I.    Personal Jurisdiction**

¶7. In his first issue, Alexander argues that DeForest's petition should have been dismissed pursuant to Rule 12(b)(4) for lack of personal jurisdiction because process was insufficient. According to Alexander, he should have been served process consistent with Mississippi Rule of Civil Procedure 81(d)(1) as opposed to Mississippi Rule of Civil Procedure 4(b).

¶8. Alexander argues that the chancery court's judgment is void because it never had personal jurisdiction over him due to DeForest's failure to serve him with a Rule 81 summons. Alexander explains that "An action to determine heirship is governed by Rule 81(d)(1) for which a summons substantially conforming with Mississippi Rule of Civil Procedure Form 1(D) should issue to known and unknown respondents."

4

¶9.    DeForest caused Alexander to be personally served with a summons via certified mail. The summons stated that a response must be mailed or delivered within thirty days from the date of the delivery. However, the record also contains another summons. The second summons is a summons by publication addressed to "The Unknown Wrongful Death Heirs, Executors, Administrators, Devisees, Legatees, or Statutory Beneficiaries . . . of Jeff Underhill, Deceased, and Any and All Persons Claiming to be a Wrongful Death Beneficiary of Jeff Underhill, Deceased." The body of the summons contained the following statement: "The only other respondents other than you in this action are Jeanne Elizabeth Tyler, Joe Alexander, Sam Underhill, Tyler Alexander, and Luke Underhill." Additionally, the summons required anyone claiming to be a wrongful death beneficiary "to appear and defend against the Petition filed by Matthew Bryan DeForest against you in this action 9:30 A.M. on the 21st day of October, 2016, . . . ." DeForest's position is that, cumulatively, the personal summons and summons by publication gave Alexander sufficient notice as required by law.

¶10.   We hold that in the instant case, the Rule 4 summons was sufficient, as the instant matter to determine wrongful death beneficiaries is not one of a determination of heirship as contemplated by Rule 81. In *Long v. McKinney*, 897 So. 2d 160, 175-76 (¶ 67) (Miss. 2004), we explained, "Although there is no specific mandated procedure for the identification of wrongful death beneficiaries, a chancery court may make such determinations; those persons bringing the wrongful death action, together with their counsel, have a duty to identify the beneficiaries, and they should do so early in the proceedings." Further, the Court

5

has explained on several occasions that a "wrongful death action is not part of the estate of the deceased, and only those individuals listed in the wrongful death statute may bring this independent cause of action." *Pannell v. Guess*, 671 So. 2d 1310, 1313 (Miss. 1996) (citing *Partyka v. Yazoo Dev. Corp.*, 376 So. 2d 646, 650 (Miss. 1979)).

¶11.    Though there is much terminology overlap and mirroring of language between a determination of heirs for the purpose of an estate and a determination of wrongful death beneficiaries, the only possible issue before the chancery court at the time was a determination of wrongful death beneficiaries, which is a different animal than a determination of heirship as governed by Mississippi Code Section 91-1-29. A determination of wrongful death beneficiaries does not require a Rule 81 summons; therefore, the Rule 4 summons DeForst caused to be served on Alexander was sufficient for the chancery court to obtain jurisdiction.

## II.    Full Faith and Credit

¶12.    The meat of Alexander's appeal is that the chancery court erred in naming DeForest as sole wrongful death beneficiary when Underhill's parental rights had been terminated by a Michigan court order and DeForest had been adopted. Key to Alexander's argument is Michigan's adoption statute, which provides,

> After entry of the order of adoption, except as provided in section 2114(2) of the estates and protected individuals code, 1998 PA 386, MCL 700.2114, *an adopted child is no longer an heir at law of a parent whose rights have been terminated under this chapter . . .* or collateral kindred of that parent, nor is an adopted adult an heir at law of a person who was his or her parent at the time the order of adoption was entered or the lineal or collateral kindred of that person, except that a right, title, or interest that has vested before entry of the final order of adoption is not divested by that order.

6

Mich. Comp. Laws Ann. § 710.60 (Rev. 2006) (emphasis added). Thus, according to Alexander, the chancery court should have given full faith and credit to "the Michigan court orders and that state's underlying statutory and common law." By giving full faith and credit to the Michigan orders terminating Underhill's parental rights and the subsequent order granting DeForest's adoption, and taking into consideration Michigan's adoption statute prohibiting an adopted child from being an heir at law of a natural parent, Alexander argues that DeForest cannot be a wrongful death beneficiary in the instant case because he is no longer an heir of Underhill.

¶13. DeForest argues that, "In Mississippi, when an alleged wrongful death occurs in Mississippi, then Mississippi law and the Mississippi wrongful death statute applies to determine the statutory wrongful death beneficiaries." The chancery court agreed, citing *Estate of Jones v. Howell*, 687 So. 2d 1171 (Miss. 1996).

¶14. In *Howell*, the Court was faced with a similar scenario wherein Warren County Chancery Court held that the decedent's natural son, who had been adopted by another man, was a wrongful death beneficiary. *Howell*, 687 So. 2d at 1173. The Court explained that it had

> previously addressed the issues now before this Court in *Alack v. Phelps*, 230 So. 2d 789, 793 (Miss. 1970), and *Warren v. Foster*, 450 So. 2d 786 (Miss. 1984). In [both cases], this Court held that an adopted child could inherit from his natural parent or parents. Moreover, in *Alack*, this Court held than an adopted child could bring a wrongful death action for his natural father's death.

7

*Id.* The decedent's natural son, Samuel Howell, had been adopted by the natural mother's new husband; the adoption had occurred in Louisiana. *Id.* at 1174. The Court summarized the appellant's arguments as follows:

> The Estate argues that when we read [Mississippi Code Annotated Section] 11–7–13 (Mississippi's wrongful death statute) in pari materia with[ Mississippi Code Annotated Section] 93–17–13 (Mississippi's adoption decree statute), we must conclude that the legislature intended that Samuel Howell Clinton's rights to bring a wrongful death action for his natural father's death be terminated at the time of adoption. Further, the Estate argues that this Court is obligated under the Full Faith and Credit Clause, Article I, Section 4, of the United States Constitution to apply Louisiana's adoption law to the case sub judice. Specifically, the Estate argues that because Samuel Clinton Howell was adopted in Louisiana, we must look to Louisiana law to determine whether or not an adopted child can inherit from his natural parent. Under Louisiana decisional law, the Estate contends, a child who has been given up for adoption cannot inherit from his natural parent or parents. See *Simmons v. Brooks*, 342 So. 2d 236 (La. App. 4th Cir. 1977).

*Id.* The Court then thoroughly addressed the issue and argument presented. Relevant to the instant case is the following:

> When dealing with the issue of adopted children bringing wrongful death actions for the death(s) of their natural parent(s), this Court has looked to Mississippi case law which holds that an adopted child can inherit from his natural parent(s). *See*, e.g., *Sledge v. Floyd*, 139 Miss. 398, 104 So. 163 (1925). This Court, by analogy, has cited our law allowing adopted children to inherit from their natural parents and applied the inheritance rule to wrongful death situations and, thus, allowed an adopted child to bring a wrongful death action for the death of his or her natural parent. *See*, e.g., *Alack*. We also note that none of the statutes in question, i.e., Section 11–7–13 or Section 93–17–13, specifically prohibits an adopted child from bringing a wrongful death action for his natural parent's death. In fact, Section 93–17–13 only goes so far as to take away the natural parent's and sibling's right to inherit from, and bring a wrongful death action for the death of, a child given up for adoption. *McLemore* [*v. Gammon*], 468 So. 2d [84, 84] (Miss. 1985). Section 93–17–13 does not expressly take away the adopted child's rights to inherit from the natural parent or to bring a wrongful death action for the natural parent's death.

Moreover, Section 11–7–13 does not distinguish between the types of children entitled to bring a wrongful death action for the death of a parent, i.e., natural or adoptive. The statute provides that the suit may be brought "in the name of a child for the death of a parent." Miss. Code Ann. § 11–7–13 (1972). While Samuel Clinton Howell was not Jones' legal child, he certainly was his biological and natural child. Mississippi's wrongful death statute allows an illegitimate child to bring a wrongful death action for the death of his parent provided the child complies with Section 91–1–15 of the Mississippi Code of 1972. It would be illogical to conclude that the legislature would allow an illegitimate child, who might have never had any interaction at all with his parent or have ever been recognized by the parent, to bring an action for that parent's wrongful death, and yet conclude that the legislature would then prohibit a child who had lived with the natural parent and was later given up for adoption from bringing a wrongful death action for the natural parent's death.

The Estate also argues that the Louisiana adoption of Samuel Clinton Howell took the form of a termination of parental rights as to Jones. The Estate offers Miss. Code Ann. § 93–15–109 for the proposition that the chancery court can terminate an adopted child's right to inherit from his or her natural parents. The Estate's reliance upon Section 93–15–109 is misplaced because the cited statute, although not factually applicable in this case, does not specifically divest an adopted child of his right to bring a wrongful death action for a natural parent's death.

*Id.* at 1176-77. The Court has squarely addressed a nearly identical issue, and in that case held that the natural son was a wrongful death beneficiary, despite the fact that the state where the adoption and termination of parental rights occurred prohibited him being considered a wrongful death beneficiary.

¶15. Alexander attempts to distinguish *Howell* by saying that the natural son in *Howell* was still a minor at the time of the wrongful death action and that the chancery court's decision to include him as a wrongful death beneficiary was an exercise of the chancery court's charge to protect the interest of minors. Alexander also argues that "the Louisiana law considered in *Howell* was decisional, common law and not statutory law, which is an important

9

distinction in this case." Alexander pulls from the Court's opinion the language that "[u]nder Louisiana decisional law, the Estate contends, a child who has been given up for adoption cannot inherit from his natural parent or parents." **Id.** at 1174. In **Howell**, the Court discussed and relied on **Alack v. Phelps**, 230 So. 2d 789, 793 (Miss. 1970) (emphasis added) (quoting 2 C.J.S. *Adoption of Children* § 63(c) (1936)), where the Court held,

> *In the absence of a statute to the contrary*, although the child inherits from the adoptive parent, he still inherits from or through his blood relatives, or his natural parents. In view of the tendency of the courts to construe adoption statutes so as to benefit the child, as pointed out above in § 6 of this Title, and also, in in [sic] view of the fact that a statute severing the relation between parent and child is in derogation of common law and should for that reason be strictly construed, it has been held that an adoption statute providing that the natural parents shall be divested of all legal rights and obligations with respect to such child should not be construed so as to deprive the child of it [sic] right to inherit from or through its natural parents. *Under such a statute it cannot be assumed that the adopted child cannot inherit from its natural parent unless there is an express legislative declaration to that effect.*

It appears that Alexander is arguing that the Michigan adoption statute is such a statute as contemplated by **Alack**. We are not persuaded by Alexander's attempt to distinguish **Howell**, and we hold that the trial court did not err in relying on **Howell** and in determining that DeForest was Underhill's sole wrongful death beneficiary.

### III. Subject Matter Jurisdiction

¶16. In his final issue, Alexander argues that the chancery court did not have subject matter jurisdiction to determine Underhill's heirs at law. Underhill was not a resident of Mississippi nor did he have any real or personal property located within Mississippi. He has no estate open or pending in a Mississippi chancery court. The only action in Mississippi is the pending wrongful death action in Greene County Circuit Court. We agree that the chancery

10

court did not have subject matter jurisdiction to determine Underhill's heirs at law; however, the chancery court did not determine Underhill's heirs at law. Because of the pending wrongful death action, the chancery court did have subject matter jurisdiction to determine Underhill's statutory wrongful death beneficiaries, and chancery court did exactly that. The chancery court found "that Matthew Bryan DeForest is the sole and only heir-at-law of the decedent *for the purposes of the wrongful death action*." Although the chancery court's wording illustrates the potentially pernicious overlap in terminology, the chancery court's finding is narrowly tailored to the wrongful death action. Any reading of the chancery court's judgment to imply that the heirs at law for the purpose of his estate have been determined by the chancery court is mistaken.

## CONCLUSION

¶17.  The chancery court had  personal jurisdiction over Alexander and subject matter jurisdiction to determine the proper wrongful death beneficiaries in the instant case. Finding no error, we affirm the chancery court's determination that DeForest is Underhill's sole wrongful death beneficiary.

¶18.  **AFFIRMED.**

**RANDOLPH AND KITCHENS, P.JJ., KING, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING.**

11